<div align="right">NEW-YORK,<br>May, 1816.<br><br>NELSON<br>v.<br>DUBOIS.</div>

<div align="center">Judgment for the defendant.</div>

---

## NELSON *against* DUBOIS.

IN ERROR, to the court of common pleas of *Orange* county. *Nelson* brought his action in the court below against *Dubois*. The first count in the declaration was on a promissory note, made by the defendant and one *Benjamin Brundige*, dated the 15th of *November*, 1811, whereby they, jointly and severally, promised to pay to the plaintiff, or bearer, 65 dollars, one year after date, for value received. The second count stated, that whereas, in consideration that *Nelson*, at the special instance and request of *Dubois*, would sell and deliver to one *Benjamin Brundige*, on credit, a certain horse, which he had occasion for, *Dubois* undertook, and promised to *Nelson* to be accountable to him for the said horse; and averred that the plaintiff did, then and there, sell, and deliver to *Brundige*, the said horse, at a reasonable price, then and there agreed upon, to wit, the sum of 65 dollars. The third count was, that whereas, on, &c., at, &c., in consideration that the plaintiff would sell and deliver to one *B. Brundige*, a certain other horse, which he had occasion for, on a credit of one year, and take his note payable at that time, he, the defendant, undertook and promised to guaranty to the plaintiff the payment of the said note; and the plaintiff averred that, confiding in the promise, &c., of the

<div align="right" style="font-size:smaller">If a promissory note, payable to bearer, or not negotiable, is endorsed in blank, the holder may write, over the name of the endorser, a guaranty, or promise to pay the note, so as to take the promise out of the statute of frauds; and this may be done at any time before, or at the trial.<br>Where A. sold a horse to B., at the request of C, and on his promise to guaranty the payment of B.'s note for the money; and B. gave a note, payable to A., or bearer, in 12 months, which C endorsed in blank; this was held to be an original undertaking by C., as surety, who was equally responsible as if he had signed the note with B.</div>

NEWYORK,
May, 1816.

NELSON
v.
DUBOIS.

defendant, he did, &c., sell and deliver to the said B. B. the said horse, at and for a certain reasonable price, agreed on between them, to wit, the sum of 65 dollars, on a credit of one year, and took his note therefore, payable at the expiration of that time; and though, &c.

The note produced at the trial was signed by B. Brundige, payable to the plaintiff, or bearer, for 65 dollars, with interest, and endorsed in blank by the defendant. The plaintiff offered to prove, that B., the maker of the note, on the day it was made, wanted to buy a horse of the plaintiff, which the plaintiff refused to sell him, unless the defendant would become his security; that the defendant, thereupon, agreed to become security for B., and wrote the note himself, and endorsed it, and delivered it to the plaintiff, and said, that he considered himself bound to pay the note, and guarantied the payment of it to the plaintiff; and the horse was then delivered to B. It was agreed by the counsel, that the guarantee of the defendant should be considered as filled up, and written up above the signature of the defendant on the note. The plaintiff, also, offered to prove that B. was then a minor, and possessed of very little property, and the credit was given to the defendant; and that, after the note became due, it was presented to the defendant, who promised to pay it. This evidence was objected to by the defendant's counsel, and rejected by the court below, as within the statute of frauds, on which the plaintiff became nonsuited, and tendered a bill of exceptions to the opinion of the court.

Ross, for the plaintiff in error, contended, that the evidence offered by the plaintiff ought to have been received; that the promise of the defendant was an original undertaking, and not within the statute of frauds.[*] The endorsement in blank, by the defendant, authorized the plaintiff to write, over his name, a promise to pay, or a guarantee. It is a letter of credit.[†] This may be done at the trial, and it made no difference whether the note was negotiable or not. The endorsement is equivalent to a new drawing.

* Leonard v. Vredenburgh, 8 Johns. Rep. 29. Bailey & Bogert v. Freeman, 11 Johns. Rep. 221.
† Doug. 514. Herrick v. Carman, 12 Johns. Rep. 160. 3 Mass. Rep. 274. 5 Mass. Rep. 358.

Story, contra, insisted, that, though there was a consideration, there must be a promise, in writing, at the time; that the promise, or guarantee, must be written by the endorser, at the time, to take it out of the statute. It is not competent for the plain-

tiff to fill up the blank, at the trial, for that purpose. Parol evidence is inadmissible to prove the guarantee.

SPENCER, J., delivered the opinion of the court. Under the third count in the declaration the evidence offered was admissible, unless, indeed, the promise is within the statute of frauds. A declaration may count, as on a promise by parol, and it may be supported by a promise in writing, if it comport with the promise stated.

Since the cases of *Leonard* v. *Vredenburgh*, (8 *Johns. Rep.* 29.,) and *Bailey & Bogert* v. *Freeman*, (11 *Johns. Rep.* 221.,) it cannot be questioned that there was a consideration for the defendant's promise. The case, then, turns on this point, was the promise within the statute of frauds?

If what was said by me, in delivering the opinion of the court in the case of *Herrick* v. *Carman*, (12 *Johns. Rep.* 160.,) be law, then the decision of the court below was erroneous. Although what was then said was deemed pertinent to that case, it may not have been necessary to the decision of the cause, and this court, therefore, are not to be considered as compromitted by it. The facts, in that case, are the same as in this, with the difference only, that it did not appear that *Herrick* endorsed the note for the purpose of giving *Ryan*, the maker of the *note*, credit with *Lawrence, Carman & Co.* It was then, and still is, my opinion, that, had he done so, he would have been liable to them or any subsequent endorsee, and that *Herrick's* endorsement might have been converted into a guarantee to pay the note, if *Ryan* did not. In the present case, it does appear, clearly and affirmatively, that the plaintiff refused to sell the horse, for which the note was given on *Brundige's* responsibility, and that the defendant put his name on the note as guarantee for *Brundige's* payment of it, when it fell due; and that, but for the defendant's undertaking, as guarantee, the plaintiff would not have parted with his property.

In saying what I did, in *Herrick & Carman*, I reposed myself, principally, on the cases of *Josselyn* v. *Ames*, (3 *Mass. Rep.* 274.,) and *Bishop* v. *Hayward*, (4 *T. R.* 470.) In the former of these cases, the plaintiff sued on a note of hand not negotiable, given by *John Ames*, and payable to the defendant; and it was averred, that the defendant had guarantied the payment

of the note to the plaintiff. The facts were, that *John Ames* was indebted to the plaintiff upon a note, and, on demand of security, he offered *Oliver Ames* as security; the old note was given up and a new one taken, made payable by *John* to *Oliver*, and upon which *Oliver* endorsed his name in blank. The court held, that the plaintiff might write an undertaking by *Oliver*, to pay the note, above his name, and then might maintain his action.

In *Bishop* and *Hayward*, Lord *Kenyon* admits, that, in a suit by a prior endorser against a subsequent one, a case might happen in which the plaintiff might recover, if his name were used for form only, and the note, though nominally payable to the plaintiff, was substantially to be paid to the defendant.

The case of *Hunt* v. *Adams*, (5 *Mass. Rep.* 358.,) bears strong analogy to this case. There, one *Chaplin* gave a note to the plaintiff's intestate, for 1,500 dollars. The defendant signed, underneath the note, an acknowledgment that he was holden as surety for the payment of the note. It was objected, that it was a collateral undertaking to pay the debt of another. *Parsons*, Ch. J., with the concurrence of the other judges, held, that the defendant was an original party to the contract, *Chaplin* as principal, and the defendant as surety. He relied on the fact, that the signatures of the promisers were made at the same time, and that, in effect, it was the note of both; and that the consideration to the surety was the credit given to the principal by the promisee.

The case of *White* v. *Howland*, (9 *Mass. Rep.* 314.,) is expressly in point. In that case, one *Taber* gave a note to the plaintiff for 250 dollars, payable on demand. On the back of it was a promise, by *Coggeshall* and the defendant, jointly and severally, to pay the note to *White*. It appeared, that the amount was loaned by the plaintiff to *Taber*, on his agreeing to give his note with two endorsers; and that the note was given with that intent, but made payable to *White*, instead of *Coggeshall*, the first endorser. The court held, that the plaintiff was entitled to recover, and that the effect of the defendant's signature was the same as if he had subscribed the note on the face of it, as surety; and that he was answerable as an original promiser, equally with *Taber*. It is evident that the promise was filled up over the names of the endorsers. In *Russell* v. *Langstaffe*, (*Doug.* 514.,) Lord *Mansfield* held, that the endorsement

of a name on checks, in blank, without sum, date, or time of payment being mentioned in the body of the notes, was a letter of credit for an indefinite sum. In *Collins* v. *Emett*, (1 *Hen. Bl. Rep.* 313.,) Lord *Loughborough* held, that signing a party's name to a blank paper, and delivering it to *B.* to draw a bill of exchange, for such sum, payable at such time, and to such person as *B.* should think fit, was a binding instrument.

In the case of *Violett* and *Patton*, (5 *Cranch's Rep.* 151.,) circumstanced very much like the one before us, Ch. J. *Marshall*, in delivering the opinion of the court, which appears to have been unanimous, said, the paper was endorsed with the intent that a promissory note should be written on the other side, and that he should be considered the endorser of that note ; and he is now concluded from saying or proving that it was not filled up when he endorsed it ; it would be to protect himself from the effect of his promise, by alleging a fraudulent combination between himself and another ; and, in that case, the exception was taken, that the statute of frauds and perjuries avoided the agreement, but the court held it did not.

I confess I do not perceive that this case is at all within the statute ; the defendant's promise is not to pay on the default of *Brundige*, but is an original undertaking as surety ; and the defendant is as much holden as if he had signed the body of the note.

VAN NESS, J., dissented.

Judgment reversed, and cause remitted, &c.