JOHN B. CAMDEN *et al.*, plaintiffs in error, *v.* KENNETH MC-KOY *et al.*, defendants in error.

*Error to Adams.*

The general rule is, that an endorsement of a note, in blank, operates as authority to the *bona fide* holder to fill up the endorsement, by writing any thing over the signature, which shall be consistent with the nature of the instrument, and the intention of the parties.

Whilst the law requires no particular form of words to constitute a promissory note, and designates no particular place at which the maker shall affix his name, in order to establish his liability in that capacity, yet, by the universal acquiescence and consent of commercial and business men, custom has established and sanctioned a form and mode of signing, which furnishes a legal presumption of the intention of the parties, and the precise character of the liability attaching to the signature; which presumption may, in many cases, be rebutted by parol evidence.

*Semble,* That the signature at the bottom of a note, on the right hand side of the paper, is *prima facie* evidence that it was affixed there in the character of a maker, whilst the same signature, at the left hand side of the paper, would furnish as satisfactory evidence that it was affixed there in the character of a witness to the instrument; and that the signature of a third person, upon the back of a note, after the payee has endorsed it, is evidence of a contract to become responsible as second endorser.

The signature of a third person upon the back of a note, in the hands of the payee, is *prima facie* evidence that it is placed there as a guaranty, and the holder has implied authority to write a guaranty over the signature; but such endorsement does not make the endorser a joint promissor, or surety, and the payee has no authority to write such a contract over it, in the absence of proof as to the intention of the parties.

THIS cause was heard in the Court below, at the February special term, 1842, before the Hon. Stephen A. Douglass.

O. H. BROWNING and NEHEMIAH BUSHNELL, for the plaintiffs in error:

1. The plaintiffs below entered a *nolle prosequi* as to the defendant Gray, and proceeded with their suit against McKoy and Johnson. In this there was no error; for in actions *ex contractu*, against several defendants, who sever in their pleas, a *nolle prosequi* may be entered by the plaintiff, as to those defendants who join in one set of pleas, and the other defendants be proceeded against to judgment. Minor *et al. v.* Mechanics' Bank, 1 Peters 46; Chit. on Bills 570–1; Shelby *v.* Mandeville, 2 Peters' Cond. R. 362; 1

Saund. 291 b (note 4) and 291 f; Woodward *v.* Marshall, 1 Pick. 500; Hartness *v.* Thompson, 5 Johns. 160.

2. It is a general rule, that if a person write his name in blank, on a commercial instrument, or on a blank piece of paper, on which a commercial instrument is to be written, that the person to whom such paper is delivered may write over the name thus written, in blank, any thing consistent with the nature of the instrument, or with the object with which the blank paper is delivered. Chit on Bills 257, and note 1; 1 Leigh's N. P. 368, 398–9, 407. And an endorsee, for a valuable consideration, of a note which is not negotiable, may write over the name of the endorser a promise to pay the contents of the note to the endorsee. Joscelyn *v.* Ames, 3 Mass. 274. And even before the statute of Anne, the endorsement of a note made the endorser liable, as the drawer of a bill, in an action by the endorsee. Nicholson *v.* Sedgwick, 1 Ld. Raymond 180; Tassell *v.* Lewis, 1 Ld. Raymond 744; Hodges *v.* Steward, 1 Salk. 125. These cases all depend upon the principle above stated, that some responsibility was intended, and that this particular liability is in accordance with the nature of the instrument.

If a person (not a payee) writes his name in blank, on the back of a negotiable note, payable to order, at the time of the execution of the note, he may be treated as a joint and several promissor with those who sign the note on its face. It is a contract of surety, or of guaranty, at the option of the payee of the note. Hunt *v.* Adams, 5 Mass. 358; Carver *v.* Warren, 5 Mass. 545; Hunt *v.* Adams, 6 Mass. 519; this decision affirmed in 7 Mass. 233, 518; White *v.* Howland, 9 Mass. 314. In this case it appears it makes no difference whether the name is on the back or face of the note. Moires *v.* Bird, 11 Mass. 436; Sumner *v.* Gay, 1 Pick. 311; Campbell *v.* Butler, 14 Johns. 349; Baker *v.* Briggs, 8 Pick. 122; Dean *v.* Hall, 17 Wend. 214; Tenny *v.* Prince, 4 Pick. 385.

It makes no difference whether the name is on the back or face of the note. White *v.* Howland, 9 Mass. 314. And a note may be endorsed on its face, as well as on its back. Chit. on Bills 253, referring to Rex *v.* Bigg, 1 Strange 18; Yarborough *v.* Bank of Eng., 16 East 12.

And if the defendant contracted to be liable in a manner different from what he is charged in the suit, this is mere matter of defence; the presumption is with the plaintiff. Carver *v.* Warren, 5 Mass. 545; Moires *v.* Bird, 11 Mass. 436.

And this right of election is in accordance with all the legal analogies in such cases. Thus, where a deed may enure in different ways, the grantee may elect which way it shall operate. 4 Cruise's Dig. 265, § 42; Jackson *v.* Hudson, 3 Johns. 375, 387.

A deed poll is to be construed most strongly against the maker. 2 Blac. Com. 380; 4 Cruise's Dig. 259, §§ 13, 14, 15, 17, 18. So in pleading, 1 Chit. Plead. 241, 522; so of powers, 4 Kent's

Com. 345. So in the case of a bill payable after sight, if the acceptor does not date his acceptance, the holder may treat it as accepted on the day of its date. Chit. on Bills 320. So in the payment of money due on two accounts, the payee, on a general payment, may apply it to either of the accounts. 2 Stark. Ev. 598. So, also, in relation to the election to be disseized. Stearns on Real Actions 6, 7, 15, 17, 177.

And that the name on the back of the note was thus written at the time of the execution of the note, will be presumed, till the contrary is shown. If, in fact, it was not, it is a matter of defence, and the burden of proof is upon the defendant. Hunt *v.* Adams, 5 Mass. 358; Carver *v.* Warren, 5 Mass. 545; Hunt *v.* Adams, 6 Mass. 519; White *v.* Howland, 9 Mass. 314; Moires *v.* Bird, 11 Mass. 436; Baker *v.* Briggs, 8 Pick. 122; Sumner *v.* Gay, 4 Pick. 311; Tenny *v.* Prince, 4 Pick. 385; Allen *v.* Rightmere, 20 Johns. 365.—In this case there was no date to the assignment, nor was the time proved. Leonard *v.* Vredenburgh, 8 Johns. 39, 40.

And this presumption is sustained by analogy with other legal presumptions of like description. Thus a note is presumed to be made on the day of its date. Chit. on Bills 168 1 Leigh's N. P. 373, 386. So it will be presumed to be endorsed before it is due, even though payable one day after date. So an acceptance, without date, of a bill payable after sight, will be presumed to be made at the date of the bill. Chit. on Bills 320.

So a deed is presumed to be executed on the day of its date. 4 Cruise's Dig. 276, §§ 4, 5; 2 Stark. Ev. 788, and note e.

So an award will be presumed to have been executed on the day of its date, and will require strong evidence to repel that presumption. Jackson *v.* Griswold, 5 Johns. 139, 142. So an interlineation in a deed. 2 Stark. Ev. 271.

Nor is an undertaking of this sort within the statute of frauds. Edgerton *v.* Matthews, 6 East 307; Nelson *v.* Dubois, 13 Johns. 175; Violet *v.* Patton, 2 Peters' Cond. R. 214, and notes; Leonard *v.* Vredenburgh, 8 Johns. 39, 40.

And a note or bill of exchange is presumed to be a good consideration, not only as between the parties thereto, but even as to third persons, whenever it is admissible in evidence. Mandeville *v.* Welch, 4 Peters' Cond. R. 642.

A. WILLIAMS and G. C. DIXON, for the defendants, in error:

1. All simple contracts, except negotiable instruments, require a consideration to be proved.

Negotiable instruments are only bills of exchange, or promissory notes. The latter derive their force from our statute, which embraces only a note endorsed by the payee.

This note, then, as against the present defendants, is not negotiable, and does not imply consideration. 4 Peters' Cond. R. 645;

Chit. on Bills 10, 11; 12 Johns. 93–4; R. L., title Promissory Notes.

2. What is the presumption to be drawn from a blank endorsement of a note by a third person, without explanation?

If he intended to be an original promissor, why not sign the note? Is it not a strong reason for presuming that he intended to create for himself a liability different from that of the maker? The Massachusetts cases all show that circumstances, explaining the intent, were either proved or admitted.

3. The endorsement of a bill, negotiable, is presumed to be made after the drawing of the bill or note, and before its maturity. By this analogy, then, if any presumption can be drawn from the face of this note, the endorsement was subsequent to the making. And this is supported, so far as they prove any thing, by the witnesses.

4. The face of this instrument and endorsements show that it is not a simple, original contract between the plaintiffs and defendants. It is apparent that Gray is the real debtor, and that the defendants, whether liable primarily or secondarily, with him, or separately, are not the original debtors.

Is their undertaking, *quoad* the plaintiffs, original or collateral?

Where any credit is given to the original or real debtor, the undertaking of the others is collateral. The face of the note and his signature show that a credit was given to him, and hence their undertaking is collateral. 8 Johns. 37–8.

5. There is a distinction between original collateral undertakings, and subsequent ones; the first may be supported by the consideration implied upon the note, or passing between the parties; the latter require a new consideration. 8 Johns. 38, 39, 40; 8 Pick. 427; 11 Johns. 221.

6. In such cases, under the English statute of frauds, and those of some States, the consideration as well as the promise is required to be in writing. In this State, the promise is sufficient in the writing. But here, as well as elsewhere, the consideration must be proved, if not recited, to sustain a subsequent collateral promise. 5 Mass. 360–1; 2 Peters' Cond. R. 215–16; 1 Wheat. Selwyn 386–7, note 1.

7. The only mode of becoming liable on a bill is by endorsement, prior to that in favor of the holder, or by a distinct collateral undertaking, to sustain which there must be an adequate consideration. Chit. on Bill 353—7.

8. Where A gives a note to B or order, and it is endorsed by C, it does not imply a valuable consideration from B to C, or an engagement that A shall pay the note at maturity. Chit. on Bills 257, note 1; *Ibid.* 266, note 2. This doctrine is consistent with, and supported by other cases. 5 Mass. 361–2; 7 Mass. 233; 8 Pick. 423; Chit. on Bills 195, note 1.

9. In all the cases where a contrary doctrine seems to be laid down by the courts, there were circumstances to explain the intent

of the parties, either proved upon the trial, or admitted in presenting the case. And Ch. J. Parker, whose opinion goes so far beyond the necessities of the case in which it is given, afterwards bases his *dicta* on the circumstances of the particular contracts. The doctrine, explained and limited by the several cases, is consistent with other authorities. 3 Mass. 274; 5 Mass. 360; 7 Mass. 233; 6 Mass. 519; 11 Mass. 436; Chit. on Bills 195, note 1; 8 Pick. 423.

10. A note not negotiable does not imply a consideration, cannot be given in evidence, under the money counts, and must have a consideration stated or avowed. This note, as against these defendants, is within the rule. Chit. on Bills 594, note 1; 10 Johns. 421.

11. Admitting the makers of the note to have been liable as joint and several promisors, the plaintiffs, by suing Gray separately, have elected to regard them as several promisors, and cannot succeed in this suit. 1 Wheat. Selwyn 386, note 1; 6 Greenl. 207; 1 Chit. Plead. 149–50; 1 Saund. 291 e.

DOUGLASS, Justice, delivered the opinion of the Court: (1)

This was an action of *assumpsit*, by the plaintiffs against the defendants, McKoy, Johnson, and Gray, as makers of a promissory note. McKoy and Johnson pleaded the general issue, which was joined, and Gray pleaded a former recovery, to which the plaintiffs demurred. Before any decision was had on the demurrer, the plaintiffs entered a *nolle prosequi* as to Gray, and proceeded to trial against McKoy and Johnson. By agreement of the parties, a jury was dispensed with, and the matters of fact as well as law were submitted to the Court. The plaintiffs offered in evidence the following promissory note and endorsement: " Three months after date, I promise to pay J. B. & M. Camden & Co., or order, four hundred and eighty dollars, value received, without defalcation.

" JOHN C. GRAY.

" January 26, 1838."

*Endorsement :*

" For value received, we jointly and severally acknowledge ourselves as securities of John C. Gray, for the payment of the within note at maturity.

" KENNETH McKOY,
" JACOB JOHNSON."

The signatures of Gray, McKoy, and Johnson were all proven to be genuine, and the plaintiffs' counsel admitted that the names of McKoy and Johnson were written in blank on the back of the note, and that they wrote said endorsement over said signatures on

(1) LOCKWOOD, Justice, was not present at the argument of this cause, and gave no opinion.

the trial. Various witnesses were then examined for the purpose of ascertaining at what time, and under what circumstances, McKoy and Johnson endorsed said note; but the whole evidence left it extremely doubtful whether they placed their names on the back of the note at the time of its execution, or long subsequently; and there was no evidence showing that they were privy to, or participated in the consideration. The plaintiffs then offered to read said note in evidence, under a declaration charging said McKoy, Johnson, and Gray as joint and several makers of said promissory note, to which the defendants objected, and the Court sustained the objection; and the plaintiffs offering no other evidence, a judgment of nonsuit, and for costs, was entered against the plaintiffs.

The assignment of errors questions the decision of the Court, excluding the note from evidence, and entering the judgment of nonsuit. Supposing the names of McKoy and Johnson to have been endorsed upon the note at the time of its execution by Gray, it becomes necessary to enquire into the nature and extent of their liability, and especially whether they, in connection with Gray, are liable, as joint and several makers of the note.

The general rule is, that an endorsement in blank operates as authority to the *bona fide* holder of the note to fill up the endorsement, by writing any thing over the signature, which shall be consistent with the nature of the instrument, and the intention of the parties. Great difficulty and confusion have arisen in applying the rule to the peculiar state of facts existing in each case. Upon an examination of the various cases cited in the argument, and others to which I have directed my attention, I find many apparently contradictory decisions, which will render it necessary to review the leading cases, in order to arrive at a satisfactory conclusion.

Herrick *v.* Carman, (1) was a case where one Ryan had executed his note to Carman & Co., and procured Herrick to endorse it in blank. Carman & Co. assigned the note to J. V. Carman, who sued Herrick, seeking to charge him on his endorsement. The Court held that as it did not appear that Herrick gave Ryan credit with Carman & Co., by endorsing the note, or that he was in any wise informed of the use to which Ryan meant to apply the note, it would intend that Herrick meant only to become second endorser, with all the rights incident to that situation; that the fact of his endorsing first, in point of time, could have no influence, for he must have known, and we are to presume he acted on that knowledge, that though the first to endorse, his endorsement would be nugatory, unless preceded by that of the payees of the note. The Court also says, had it appeared that Herrick endorsed the note for the purpose of giving Ryan credit with Carman & Co., he would have been liable to them, or any subsequent endorsers, and his endorsement might have been converted into a guarantee to

(1) 12 Johns, 159.

pay the note, if Ryan did not, according to the decision of the Supreme Judicial Court in Massachusetts. (1) From this decision, it appears that the endorser was not liable, either as maker or guarantor, for the reason that it was not proven that the payees gave the credit to him at the time they received the note ; and if that fact had been proven, he would have been responsible as guarantor, and not as maker of the note.

The case of Herrick *v.* Carman, (2) was an action on the same note, and the Court decided that it could not be maintained, either in the names of the payees, or the assignees of the note.

In Nelson *v.* Dubois, (3) the Court maintains the same doctrine, upon a case similar in all respects, except that the person who endorsed the note in blank, did so for the purpose of inducing the payees to accept it, and part with their property in lieu of it. In delivering the opinion, Chief Justice Spencer says, the facts in that case (Herrick *v.* Carman), are the same as in this, with the difference only, that it did not appear that Herrick endorsed the note for the purpose of giving Ryan credit with Carman & Co. It was then, and still is, my opinion, that, had he done so, he would have been liable to them or any subsequent endorsee, and that Herrick's endorsement might have been converted into a guarantee to pay the note, if Ryan did not. In the present case, it does appear clearly and affirmatively, that the plaintiff refused to sell the horse for which the note was given, on Brundige's (the maker's) responsibility, and that the defendant put his name upon the note as guaranty for Brundige's payment of it, when it fell due ; and that but for the defendant's undertaking, as guaranty, the plaintiff would not have parted with his property.

The case of Campbell *v.* Butler, (4) was founded upon a state of facts precisely similar in all respects to the preceding one. One Law executed his note to Butler, and Campbell & Harvey endorsed their names on the back of the note, for the purpose of enabling Law to obtain from Butler, a horse and wagon, in exchange for the note. Butler sued Campbell, upon his endorsement, and on the trial, filled up the blank endorsement as follows :

" For value received, I undertake and promise to guaranty the payment of the money within mentioned, to the within named James Butler. " WILLIAM CAMPBELL."

*Per Curiam :* The question is, whether the plaintiff below was authorized to write such a contract over the names of the endorsers of the note, respectively, and can sustain an action upon that contract. According to the decision in Nelson *v.* Dubois, and as the law is recognised in Herrick *v.* Carman, we think the plaintiff had a perfect right to recover, as on an original undertaking to pay, by each of the endorsers, as guarantors of the note. The defendant in error is, therefore, entitled to judgment.

(1) 3 Mass. 274. (2) 10 Johns. 224. (3) 13 Johns. 175. (4) 14 Johns. 349.

The case of Josselyn *v.* Ames, (1) which was cited in Herrick *v.* Carman, was an action by the assignee against the assignor of a note. The facts disclosed in the pleadings and proofs are these : Josselyn held a note against John Ames, and demanded security upon it. John proposed his brother Oliver as surety, who was accepted ; and accordingly, John executed a note to Oliver, who endorsed it in blank, and delivered it to Josselyn in lieu of the first note. Josselyn sued Oliver on his note, averring in his declaration, that " the said Oliver then and there promised the said Josselyn, to guaranty to him the payment of the contents of said note, on demand, and then and there, in consideration of the premises, promised the said plaintiff to pay him the contents of said note, agreeable to the tenor of the same," etc. The Court held that the blank endorsement did not authorize such an averment ; but did authorize the following endorsement over the signature :

" For value received, I undertake to pay the money within mentioned, to E. J."

I confess that I am unable to discover what principle this case does establish, for the reason that I can perceive no material difference between the averment in the declaration, which the Court held to be unauthorized by the blank endorsement, and the one dictated by the Court ; and it seems the parties took the same view of it, for they immediately agreed to have judgment entered upon the declaration as it stood.

The case of Ulen *v.* Kittridge, (2) was upon a state of facts substantially the same as Nelson *v.* Dubois, and Butler *v.* Campbell. Ulen declared against Kittridge, who had endorsed the note in blank, as guarantor, and proved a parol agreement that he was to guaranty the payment in the event that the maker did not pay it by a certain time ; and he recovered according to his averments and proof. The question there was, whether the endorsement was valid, as against the statute of frauds, and the Court says, we are of opinion that the defendant's signature on the back of the note, with the authority given by him to the witness to write over the signature a sufficient guarantee, and such guarantee being accordingly written by the witness, pursuant to such authority, may be considered as a memorandum signed by the party, within the intent of the statute, as fully as if it had been written in the defendant's presence, immediately after the signature.

In Moire *v.* Bird, (3) the action was brought by the payee against an endorser in blank, who was not in any other manner a party to the note ; but there was proof, showing that the endorser had affixed his signature there in pursuance of an agreement between the maker and the payee, at the time of the sale of the land, and the execution of the note. The defendant insisted, that if liable at all, he was only responsible as endorser ; but the Court held that in

(1) 3 Mass. 274.      (2) 7 Mass. 233.      (3) 11 Mass. 435.

consequence of the parol agreement, he was liable as original obligor.

Tenny *v.* Prince, (1) was a case where a person endorsed a note in blank, nine months after date, and three months before maturity, and the payee brought suit against the endorser, charging him as original promisor. The Court held that he could not be rendered liable in that capacity, nor in any other, unless the endorsement was based upon some new consideration, and then only as guarantor.

In Sumner *v.* Gay, (2) the plaintiff declared against the defendant, who had endorsed a note in blank, as maker of the note in the first count, and as guarantor in the second; and the suit was maintained; but it does not appear whether as maker or guarantor, nor was it material in that case, for the liability would have been the same.

Baker *v.* Briggs, (3) was an action brought to recover the amount of a note made by Ryan to Baker, and endorsed in blank by Briggs. It appears, from the report, that one count charged Briggs as maker of the note; but we have no means of knowing in what character he was declared against in the other counts. The proof in the case shows that it was the understanding of the parties that he should be held responsible as surety, and the Chief Justice treats him as an original promisor.

It is worthy of note, that, in each of the preceding cases, the endorsement was in blank; the endorser was sued alone, unconnected with the maker; and in every one, where a recovery was had, there was proof showing, affirmatively, the understanding of the parties, and the nature of the transactions between them. There are two other cases in the Massachusetts Reports, which belong to a different class, and deserve attention.

The case of Hunt, (Adm'r.) *v.* Adams, (4) was on a promissory note made by one Chaplin, to the plaintiff, with the following endorsement at the bottom:

" I acknowledge myself holden as surety for the payment of the demand of the above note. Witness my hand.

" Barnabas Adams."

Adams was sued as surety in said note; and the Court decided that the suit was well brought, saying that the defendant is an original party to the contract, as well as Chaplin. The contract, in its legal construction, is a promise made, as well by the defendant as by Chaplin, for value received, to pay fifteen hundred dollars to plaintiff's intestate. To this promise Chaplin has signed as principal, and defendant as surety. This mode of signing is an accommodation between the promisors, by which the defendant is entitled, if he pay the note, to an indemnity from Chaplin; but as to the intestate, they must be considered as joint and several promi-

(1) 4 Pick. 385.    (2) 4 Pick. 311.    (3) 8 Pick. 122.    (4) 5 Mass. 358.

sors. Again the Chief Justice says, the legal effect of a note in this form is not different from a note in the form of " I, A ,B, as principal, and I, C ,D, as surety, promise to pay, etc." This last form is not uncommon, and the promise has always been holden to be made by each as original promisor.

The other is the case of White *v.* Howland, and is similar to this in the facts of the case, the form of the action, and the reasoning of the Court. These are distinguishable from all the other Massachusetts cases in this, that the endorsement was written out in full, and mutually agreed upon, by the parties, before signing. The terms of the contract, and the character and extent of the endorser's liability, were matter of agreement between the parties, and it only remained for the Court to execute that agreement according to its spirit and legal effect. If the endorser was liable as a joint maker of the note, in the capacity of surety, he became so in pursuance of the provisions of an agreement written and signed by himself, and not by virtue of a contract made for him, by the Court, or the construction of law, over a blank endorsement upon the back of a promissory note.

In Dean *v.* Hull, (1) the doctrine upon this subject is discussed with great learning and ability. The New York and Massachusetts cases are all reviewed by Justice Cowen, and the conclusion seems to be, that the endorser cannot be charged as maker, unless there are some peculiar circumstances arising out of a promise to become originally and directly responsible, or a participation in the consideration for which the note was given. In fact, such a state of case was shown, by proof, to exist in Nelson *v.* Dubois, and Campbell *v.* Butler, and, indeed, in all the New York cases where the endorser in blank was held responsible as guarantor; and for the want of such evidence, it was held, in Herrick *v.* Carman, that the endorser was not liable, either as maker or guarantor.

Besides the absence of any evidence connecting McKoy and Johnson with the original consideration of the note, the case under consideration differs from those referred to, or any I have been able to find in the books, in one essential particular. Here the makers and endorsers are sued jointly, as makers of a joint and several promissory note. In each of the others, the suit was against the endorser alone; and I have been able to find no case in which the maker and endorser were joined in one action. This difference becomes important, for the reason that in most, if not all the cases, except Moire *v.* Bird, where the endorser has been held to be an original promisor, the declaration contained counts charging the defendant as guarantor, as well as maker; and the language of the Court usually is, that he is responsible as original promisor or undertaker, without distinguishing between maker and guarantor. In those cases it was not material in which character the defen-

dant was responsible, as the effect would have been the same, as it regards the form of the action, and the extent of the liability. If, then, this question is to be determined upon the weight of authority, we do not feel authorized, in the absence of any testimony showing the understanding of the parties, to treat McKoy and Johnson as joint and several makers of the note with Gray. Aside from authority, and relying upon general principles, the question is, in our opinion, free of difficulty. Whilst the law requires no particular form of words to constitute a promissory note, and designates no particular place at which the owner shall affix his name, in order to establish his liability in that capacity, yet by the universal consent and acquiescence of commercial and business men, custom has established and sanctioned a form and mode of signing, which furnish a legal presumption of the intention of the parties, and the precise character of the liability attaching to the signature, which presumption may, in many cases, be rebutted by parol evidence. For instance, a signature at the bottom of a note, on the right hand side of the paper, is *prima facie* evidence that it was affixed there in the character of maker, whilst the same signature, at the left hand side of the paper, would furnish equally satisfactory evidence that it was placed there only as a witness to the instrument. So the signature of a third person, upon the back of a note, after the payee has endorsed it, is evidence of a contract to become responsible as second endorser. If custom has ripened into the form of legal presumption, in these respects, it would seem to follow, that a departure from this custom would negative such presumption, and furnish *prima facie* evidence of a different kind of liability. The authorities are not definite and conclusive as to the technical character of this liability; yet their general tendency, as well as the nature of the transaction, lead us to the conclusion that it amounts to a guarantee.

Upon the ground of variance, the note was clearly inadmissible in evidence. The note declared on purported to be made and signed by McKoy, Johnson, and Gray, and the note offered in evidence was signed by John C. Gray alone, and endorsed by McKoy and Johnson, with implied authority to write a guarantee over the signatures. Upon the well settled principle, that the pleadings and proofs must correspond, the note was properly rejected.

In this case, it is unnecessary to enquire whether the plaintiffs, after entering a *nolle prosequi*, as to Gray, could proceed to trial and judgment against the other defendants.

The judgment is affirmed.

CATON, Justice, delivered the following dissenting opinion:

I regret that I feel compelled to disagree with a majority of the Court in this case. After a careful examination of the authorities and general principles applicable to the main questions involved,

I am constrained to the conclusion, that where a name is found on the back of a promissory note in the hands of the original payee, the presumption of law is, in the absence of proof on the subject, that it was put there at the time of the making of the note, and as part of the original transaction. In the case under consideration, the proof is so entirely uncertain and unsatisfactory, that it leaves the mind without a bias or inclination one way or the other, and the law is left to raise its own presumption on the subject. The name on the back of a note, while in the hands of the original payee, does not make the writer, in a technical sense, an endorser. He cannot be the first endorser, because he is not the payee of the note, nor can he be a second or any subsequent endorser, because his endorsement is not preceded by the name of the payee. The very term endorser presupposes that the note, either is, or has been negotiated. The defendants, then, cannot be treated as endorsers of this note. Then for what purpose were the names put on the back of it? Not being endorsers, it was not for the purpose of giving the note negotiability, but must have been for the purpose of increasing the payee's security; and if this was the object, there is nothing unreasonable in presuming that the security was required and obtained, at the time the note was given. This security was required because the payee was not satisfied with the responsibility of the maker of the note. If this responsibility of the defendants was undertaken at the time the note was given, then no new consideration was necessary to make their undertaking obligatory on them, because the presumption of law is, that it was a part of the original contract between the plaintiff and Gray, that this security should be given. By presuming that this endorsement, (and I use the term not in its technical sense) was made at the time the note was given, and was a part of the original contract, we give effect and efficacy to the acts of the defendants. If we do not presume that the undertaking was made at that time, we let go everything like certainty, and determine without any fixed principle or certain rule. If we determine that it was made after the execution and delivery of the note, and on a new arrangement, it would be an undertaking on the part of the defendants to pay the preëxisting debt of Gray, which, by the statute of frauds, must be in writing, on a good consideration. By adopting the construction which I give, a manifest embarrassment is avoided, and the evident intent of the parties is carried into execution; and unless we do adopt that construction, we shall, in most instances, discharge the liability of such sureties altogether. Unless the presumption of law is that such an endorsement was made at the same time with the note, we must presume it was made afterwards; and if we do this, we determine that the act was *prima facie* void, because we make it a new and independent transaction, unconnected with the consideration of the note, and requiring a new consideration to be proved to support it. But I do not understand the opinion of Mr. Justice Douglass, to de-

termine that the presumption of law is, that the names of the defendants were written on the note after its execution. But in the absence of all proof on the subject, the law must determine at what time this undertaking was entered into by the defendants, whenever that question of time becomes material, as it most unquestionably does in a case like this. It will not be denied, I presume, that if it were proved by testimony on the trial, that the defendants wrote their names on the back of this note, at the time the note was made, it would all be considered one transaction, and supported by the same consideration, and their liability would be fixed; while, on the other hand, if it were proved that their names were not put there till afterwards, it would be a new and independent undertaking, to support which the plaintiff must prove a new consideration. I think, then, that the courts of New York and Massachusetts, in determining, in the absence of all proof on the subject, in cases like the present, that the endorsement was made at the time the note was made, and for the same consideration, have adopted a sound and salutary rule, perfectly consistent with the general principles of law, and, in fact, the only one that can secure to the parties, in many, if not in most instances, the rights and liabilities intended by them; and against this I have been unable to find a solitary decision or *dictum.*

If I have not failed, then, in what I have been attempting to show was the time and consideration of this endorsement, then it was competent for the payee to write any agreement over the names of the defendants, consistent with the nature of the instrument, and the agreement of the parties; (1) and when this is done, the parties are liable on that agreement, in the same way that they would have been, had they filled up the endorsement themselves, at the time.

The enquiry now is, what was the nature of the liability they intended to assume? This, too, in the absence of all proof on the subject, the law must determine, from the nature of the case, and the circumstances of the transaction; while, if there is any satisfactory proof, that must control and determine the nature and extent  of the liability. I have already said that the defendants here cannot be considered endorsers, because the paper was never put in circulation, (2) but has always remained in the hands of the original payee, to whom alone the defendants are liable, if they are liable at all, and to whom an endorser can never be liable, where, as in this State, a note can only be put in circulation by endorsement. The payee of a note here must be the first endorser; and he, as first endorser, must stand between all subsequent endorsers and danger; so that here, if we treat the defendants as endorsers at all, they are second and third endorsers, so that instead of their being liable to the payee, he in fact might become liable to them. The liability of

---

(1) Chit. on Bills 257, note 1; Josselyn *v.* Ames, 3 Mass. 274, and cases there cited; Beckwith *v.* Angel, 6 Conn. 315.    (2) Chit. on Bills 44.

an endorser is only conditional; while, I presume it will hardly be doubted, the liability these defendants intended to assume was absolute. If I am not mistaken in the presumptions which the law raises, then the nature of the defendants' liability is precisely the same as if it had been proved, on the trial, that the defendants and Gray put their names to this paper at the same time, and for the purpose of increasing the plaintiffs' security, and that in consideration of their becoming such security, the plaintiffs gave the credit, which, without their names, might not have been given. Upon such a state of facts I hold, and upon the authority of the cases referred to in the opinion of the majority of the Court, (1) that these defendants became original joint and several promisors with Gray, for the payment of the sum of money in this note mentioned, and that their agreement with the plaintiffs was absolute, that the money should be paid as in the note expressed; and, in pursuance of such understanding, the plaintiffs were authorized to write an agreement over the defendants' names, so as to charge them either as guarantors or as sureties; this being perfectly consistent with the nature of the instrument, and the agreement of the parties, which was that their responsibility should be absolute, for the payment of the money, and not conditional, as it would have been, had they been technical endorsers. In this case, then, I hold that the plaintiffs had a right to fill up this contract as they have done, to wit: "For value received, we jointly and severally acknowledge ourselves as securities of John Gray, for the payment of the within note at maturity." The plaintiffs having chosen, as they had a right to do, to treat the defendants as sureties to this note, the authorities clearly establish that they are liable as joint and several makers of the note, precisely the same as if the note had read, "We jointly and severally promise to pay, the first as principal, and the others as sureties," &c., and their names had all been put to the bottom of the note.

It is said, however, that this case is distinguishable from any of the cases to which reference has been made, in this, that, in the case before us, the principal and sureties were all charged in the same suit, whereas, in all the other cases, where the person, whose name is found on the back of the note, has been treated as original maker of the note, he has been sued separately. But this, I submit, can make no difference in principle, and is attributable rather to accident, than necessity. If all can be treated as joint and several makers of the note, there is certainly no reason why all may not be sued jointly, and the sureties surely ought not to object that their principal is joined with them. But at the time

(1) Josselyn *v.* Ames, 3 Mass. 274; White *v.* Howland, 9 Mass. 315; Hunt *v.* Adams, 5 Mass. 358; Herrick *v.* Carman, 12 Johns. 159; Nelson *v.* Dubois, 13 Johns. 175; Ulen *v.* Kittridge, 7 Mass. 233; Moire *v.* Bird, 11 Mass. 435; Campbell *v.* Butler, 14 Johns. 349; Beckwith *v.* Angel, 6 Conn. 315; Alein *v.* Rightmere, 20 Johns 365; Dean *v.* Hull, 17 Wend. 214.

this note was offered in evidence, and rejected by the Court, Gray was not a party to the suit. The Court had permitted the plaintiffs to dismiss their suit as to him, and proceed as to the present defendants, so that, if the Court was correct in permitting this to be done, the suit then stood precisely as if Gray had never been made a party to it.

A majority of the Court differing with me in opinion on this question, I have deemed it unnecessary to examine the question, whether the Court below was correct in allowing the plaintiffs to discontinue as to Gray, and proceed as to the other defendants ; while this would have been an important enquiry, had a majority of the Court been with the plaintiffs on the other points.

*Judgment affirmed.*