iloBifBLOWER, C. J.
This is not an occasion for any re *258 marks upon the frame work of this declaration, any further than may become necessary, for the purpose of ascertaining the substantial ground upon which the plaintiffs seek to recover. In general terms, it is an action brought upon a special agreement, in writing, by which the defendant in consideration of certain matters therein stated, promised the plaintiffs, to pay them the money mentioned in a certain promissory note given to them by another person
That such an agreement in writing, as that stated in the declaration, whether it is an agreement within the statute of frauds or not, is a good and binding contract, there is no doubt. If it is an agreement to pay the debt of another person, and so within the statute, then it being in writing, and showing upon its face, a sufficient consideration, it is a valid agreement. If on the other hand it is a promise not within the statute, why then it need not to have been in writing and might have been proved by parol. But the agreement having been reduced to writing and signed by the defendant, as the plaintiffs have expressly averred, was more easily proved on the trial: so that the plaintiffs in order to maintain their count had only to produce and prove the defendant’s signature to the written agreement set out in the declaration. Instead of doing so, however, the plaintiffs simply produced on thestrial, a promissory note made to them by N. Burrows, for two hundred and twenty-four dollars and fifty cents, with nothing written upon the back of it, but the naked signature of the defendant; and then sought to prove by parol, not that the defendant had ever made even verbally such a bargain or promise as they had set out in their declaration, but a variety of facts and circumstances from which the jury might have inferred, that it was very reasonable to suppose, the defendant might have made just such a contract, as the plaintiffs had declared upon.
Independently therefore of the question, whether the promise declared upon, was a promise within the -statute, and therefore necessary to be in writing, or only such a promise as might have been made and proved by parol, the Circuit Court, in the absence, as the fact was, of all evidence under the common counts, did perfectly right to nonsuit the plaintiffs, upon the plain principle that they had failed to produce any such instrument of writ *259 iiig as they had declared upon. A man might as well sue me upon a special agreement in writing, to build a house for him, and then come into court with my naked signature on a piece of paper, and leave it to the jury to say, under such evidence as he might give, whether he had not a right to set down after the trial, and write over that signature just such a contract as he had set out in his declaration.
But it seems from the course taken on the trial by the plaintiff’s counsel, and his argument on this motion, that he proceeded on the supposition, that the defendant by the mere act of writing his name on the back of that note, had authorised the plaintiffs to write over it a special agreement to guaranty the payment of the note; and not only so, but that they might fill up that blank indorsement at, or even after trial, verdict and judgment, or never fill it up at all, notwithstanding they had expressly declared upon a special agreement in writing.
In all this I think the plaintiffs were wrong, unless the statute of frauds has been repealed, und the rule, which requires that the allegata and probata must correspond, has been abolished.
Even in the ordinary case of actions by endorsees of negotiable paper, where the plaintiff claims title to the instrument by the indorsement of the payee, and where by the settled rules of law, the mere signature of the payee on the back of the note, is an assignment of it to the holder, and by the law of merchants, fully authorises him to over-write the usual words of assignment, (for which see Edie et al. v. The East India Co. 2 Burr. 1215, S. C. 1 Bl. R. 295; Clawson v. Gustin 2 South. 821;) it has frequently been decided by this court, that although the indorsement may be filled up at any time during the trial, yet that it must bo done before judgment, or else it will be error, Clawson v. Gustin 2 South. 81; Riker v. Corby, Penn. R. 911. But whether the omission to fill up the blank indorsement in such cases, before verdict or judgment, would now be considered error or not, is a question not involved in this case. The plaintiffs here are the payees, not the indorsees of the note. They derive no title to it, from the fact that the defendant wrote his name upon it. He was no party to the note, nor is the action brought on the note, but on an alleged new and subsequent contract, entered into between the plaintiffs and the defendant, after the note had been *260 made and delivered to them. The declaration does not state, nor was it proved, or offered to be proved on the trial, that the note was made by Burrows, and accepted by the plaintiffs, in pursuance of any previous agreement or understanding between them and the defendant, that the defendant should write his name upon the back of it, either as a joint maker, a security, or as a guarantor of the payment, or for any other purpose whatever.
If therefore, before action brought, or at the trial, the plaintiffs had actually written over the defendant’s name,just such an agreement as they have set out in the declaration, it would have had no more force, than if it had been written over a signature on a blank piece of paper. Its validity would have depended on the right of the plaintiffs to draw such an agreement over that signature. Its being on the note, only served to identify the instrument to be guaranteed.
Suppose then, the plaintiffs had had the defendant’s signature on a blank piece of paper, with authority to over-write just such an agreement as they have set out in their declaration, could they have come into court and maintained an action upon such a declaration by simply producing that signature, and then proving their authority to write over it just such an agreement as they had declared on. This will not be gravely insisted on; and yet, that is precisely what has been attempted to be done in this case; unless indeed there is more virtue in the mere signature of a stranger to the contract, on the back of a note or bond, than there would be in such a signature on a blank paper. Such a doctrine would enable a man to try experiments without the danger of incurring the guilt of forgery. If he failed to prove his authority to write over a signature what in his declaration he had stated to be in writing, bur what in fact had never been written, he would be defeated in the action, but could not be indicted for forgery. Besides, such a proceeding is contrary to all analogy and in violation of the rule that requires a correspondence between the allegation and the proof. The nonsuit was therefore right, on the ground that the plaintiffs failed to produce or prove any such special agreement as they had declared on.
But the nonsuit was right on another ground. The plaintiffs failed to show by any legal or competent evidence, that they had any authority to write over the defendant’s name, any such agree *261 ment as they had set out in their declaration, or any other special contract whatever. Yo such authority flows from the mere act of a third person putting his name on the back of a note, before it has been indorsed by the payee. The mere signature of such third person on the back of a note, per se creates no commercial contract whatever; though it may subject him to the liabilities of a second endorser, if the payee thinks proper to endorse it also and put it in circulation and the note should get into the hands of an innocent bona fide holder. Bishop v. Hayward, 4 Ter. R. 470; Tillman v. Wheeler, 17 Johns. 326; Herrick v. Carman, 12 Johns. R. 159. In the absence of all evidence to the contrary, the legal presumption would be, that the party put his name on the note for the mere purpose of giving it the credit of his name as second endorser, and nothing more.
In Tilman v. Wheeler, 17 Johns. 326, an attempt similar to the one now under consideration was made. The plaintiff who was the payee of the note declared on a special guarantee. On the trial he produced the note, with the naked signature of the defendant indorsed on it; and argued that the defendant, by making that indorsement, had given him a right to fill it up with such a guarantee as he had declared on, and that the court would presume that it had been filled up so as to support the declaration. But the court denied both branches of the proposition, and held that the defendant could only be considered in the position of a second indorser.
I know there is some conflict in the American books upon the effect of such an endorsement. By some courts, it has been held, per se to make the indorser liable as a joint maker, by others to bind him as a security for the maker, and by others again, to authorize the payee to write over the name of the indorser a guarantee of the debt. And these decisions have given rise again to many other questions growing out of them, as may be seen by the cases cited in the notes to pages 272 &c. of Chitty on Bills. But in my opinion, neither of those contracts arise out of, or are to be implied from, the mere fact of such an indorsement. Instead of that, the effect and operation of it must depend upon the real history of the transaction, and the understanding of the parties at the time of making the note and the indorsement.
In Leonard v. Vredenburg, 8 Johns. 29; Bailey et al. v. Free *262 man, 11 Johns. 221; Nelson v. Dubois, 13 Johns. 175; Campbell v. Butler, 14 Johns. 349; Jossely v. Ames, 3 Mass. 274; Hunt v. Adams, 5 Mass. 358; White v. Howland, 9 Mass. 314; and I believe in every other well considered case in which such indorser has been held liable asa guarantor, the courts put their decisions distinctly on the ground, that the defendant was a party to the original contract on which the note was made; that the indorsement was not an undertaking to pay or to guaranty the payment of a pre-existing debt of another person, and that although the promise was so far collateral, as to be within the statute of frauds, and therefore required to be in writing, yet it was an original contract entered into at or before the giving of the note, and upon the faith of which, the payee of the note had loaned his money or delivered his property. Or, in the language of the Supreme Court of the United States in D’Wolf v. Rabaud et al. 1 Peters 476, 500, they are cases where the original consideration flows from the payee of the note, not solely upon the promise of either the maker of the note, or the person indorsing it; but npon the promise of both, diverso intuita; and each becomes liable to the payee, not upon a, joint, but upon a several original consideration.
How far the courts have been successful in bringing the cases referred to upon the particular facts of each case, within the principles above stated,'it is not necessary for me to discuss ; but in the case now before us, there was no pretence, that the defendant put his name on the note, under any such trilateral contract as is described in the cases I have cited ; and therefore, the plaintiffs had no authority to write over the defendant's name, such a guarantee as they have set out in their declaration.
The motion must therefore be denied with costs.
Elmer and Whitehead, Justices, gave no opinions, not having heard the arguments.
Cited in Watkins v. Kirkpatrick, 2 Dutch. 89; Chaddock v. Vanness, 6 Vr. 523.