Gilmore v. Spies.

*New York General Term Coram Cady McCoun & Hurlbut*

SAME TERM.  *Before the same Justices.*  *P, 136.*

GILMORE and others *vs.* SPIES.

A person who puts his name upon a negotiable note—in the absence of clear and direct evidence of an intention to become a joint maker or guarantor thereof—is to be regarded only in the light of an endorser; and as assuming no other responsibility than that which an ordinary endorsement of a negotiable note imports.

Where a note, specifying no place of payment, was made and endorsed in the city of New-York, where it bore date, by persons residing in Mexico at the time, and who continued to reside there until the note became due; and the fact of their residing in Mexico was known to the holder of the note, yet he took no steps to have the note presented for payment at their place of residence, when it became payable, but kept it in his possession in the city of New-York, and merely gave notice, by letter, to the maker and endorser that the note was due and not paid; *Held* that this was not such a demand, and notice of non-payment, as the law requires, to charge the endorser.

X *affirmed 1 Const. 321.*

Gilmore *v.* Spies.

The circumstance that the maker of a note resides in a foreign country, affords no excuse to the payee, or holder, for not following him with the note and demanding payment there, so far as the endorser is concerned; unless the payee or holder has protected himself from the necessity of doing so, by specifying some other place of payment, in the body of the note.

The holder of a note not payable at any particular place, must present the same for payment, at maturity, at the known place of residence of the maker, though it be in a foreign country; if he means to hold the endorser.

ERROR from the superior court of the city of New-York. The action in the court below was by Spies against Gilmore and J. Jewett and G. W. Jewett. The plaintiff, in the first count of his declaration, declared upon a bond executed by Gilmore as the alleged debtor, and by the other defendants as his sureties, unto the plaintiff claiming to be the creditor of Gilmore, under the 55th section of the statute relative to attachments against absconding, concealed and non-resident debtors, (2 *R. S.* 12,) and the act amendatory of that section. (*Laws of* 1833, *ch.* 52, § 1.) The condition of that bond was, that the obligors would pay to each attaching creditor the amount justly due and owing from Gilmore to him, at the time he became an attaching creditor, on account of any debt claimed and sworn to by him, with interest, and costs of the attachment. The breach assigned was that there was due from Gilmore to the plaintiff, at the time of his becoming the attaching creditor, the sum of $737,93; which indebtedness arose upon a joint and several note for $530,07, dated September 16, 1835, made by Gilmore and one John Furlong, payable to the order of the plaintiff, six months after date. The second count was upon a several note made by Gilmore and Furlong, of the same date and amount, and payable at the same time. The third, fourth, fifth and sixth counts charged Gilmore as the guarantor of a note of the same date and amount, and payable at the same time, made by John Furlong. The defendants pleaded the general issue, and gave notice, 1st. That Gilmore was not indebted to the plaintiff at the time of giving the bond; 2d. Payment; 3d. That Gilmore was surety for Furlong, and was discharged by time being given to Furlong, without Gilmore's consent; and 4th. Set-off.

Gilmore *v.* Spies.

On the trial the plaintiff gave in evidence the following note:

"$530,07-100.                    New-York, Sept. 16th, 1835.

Six months after date I promise to pay to the order of Mr. Adam W. Spies, five hundred and thirty 07-100 dollars, value received.               (Signed)       JOHN FURLONG.

[Due March 16–19.]   (Endorsed)   ROBERT GILMORE."

.He also proved that the note was given at the store of the plaintiff in the city of New-York; and that Gilmore and Furlong both resided at Matamoras, in Mexico. The cause of giving the note was this: Furlong being indebted to the plaintiff, came to his store with Gilmore, and applied for six months further credit; offering to give Gilmore as security. The plaintiff accepted the proposal; whereupon the note was drawn, signed by Furlong, and endorsed on the back by Gilmore, and the old note was given up to Furlong. When the note fell due, letters were written by a clerk of the plaintiff, to each of the parties Furlong and Gilmore, at Matamoras, informing them of the non-payment of the note, and asking payment of it. These letters were sent by the first vessel that sailed after the maturity of the note. It was also proved that Furlong was in the city of New-York after the last note was given.

The defendants objected to the testimony in relation to the sending of notice to Gilmore after. the maturity of the note, and the testimony was received subject to the objection. The defendants also objected to the giving of the note in evidence; on the ground that there was no breach alleged in the declaration under which it could be received.

The counsel for the defendants insisted that Gilmore was an endorser of the note in question, and only liable upon condition of a demand of payment, at the expiration of the days of grace and notice of non-payment; and that there being no evidence of a demand of payment, and notice of non-payment, the plaintiff had not made sufficient proof to entitle him to recover. But the judge charged the jury that under the circumstances of the case, as they appeared in evidence, no demand of payment upon Furlong, the maker of the note, or notice of the non-pay-

ment thereof to Gilmore, was required by law, to entitle the plaintiff to his action against the defendants; and that the absence or want of evidence of such demand and notice constituted no defence to the suit.

The jury found a verdict for the plaintiff.

*A. Crist,* for the plaintiffs in error. 1. Robert Gilmore, the alleged debtor and one of the defendants, was an endorser of the note in question; and therefore only liable, on condition of a demand of payment at the expiration of the days of grace, and notice of non-payment. His name was written in blank on the back of the note. This is in legal effect an endorsement. (*Dean* v. *Hall,* 17 *Wend.* 214. *Seabury* v. *Hungerford,* 2 *Hill,* 80. *Hall* v. *Newcombe,* 3 *Id.* 233. *S. C. in error,* 7 *Id.* 416.) There is nothing in the case to show that the defendant, Gilmore, contracted, or intended to contract, a different obligation. The letter from the plaintiff shows that he considered the defendant Gilmore as standing in the situation of endorser. No demand of payment was made, or notice of non-payment given. 2. There is nothing in this case which dispensed with the demand of payment, and the notice of non-payment. The defendant Gilmore was not privy to the consideration. He was a mere accommodation endorser; and he might have been charged and made liable as endorser. If this be so, the plaintiff had no right to offer the note in evidence under the declaration. The declaration counts against him as surety, and as guarantor; but not as endorser. No place of payment is mentioned in the note. The maker and endorser resided out of the state when the note was given, and when it became due. (*Taylor* v. *Snyder,* 3 *Denio,* 145. *Bradley* v. *Phelps,* 2 *Root,* 325. *Williams* v. *Matthews,* 3 *Cowen,* 252. *Berry* v. *Robinson,* 9 *John. Rep.* 121. *Anderson* v. *Drake,* 14 *Id.* 114.) The general rule, respecting demand of payment, as laid down in *Woodworth* v. *Bank of America,* (19 *John.* 391,) is that where no particular place of payment is designated in a promissory note, the holder is bound to demand payment of the maker personally, or at his residence. There is but one excep-

Gilmore *v.* Spies.

tion to that rule, viz. where the maker has left the state subsequent to the execution of the note. (*Magruder* v. *Bank of Washington,* 9 *Wheat.* 598.) If the maker of a note resides out of the state at the time of giving it, a personal demand, or demand at his residence, is necessary. A notice of non-payment without a previous demand, where a demand is necessary, is a mere nullity. 3. There was no breach assigned in the declaration under which the plaintiff could give the note in evidence, or under which he could recover. 4. The plaintiff gave the maker, Furlong, time; and Gilmore, the endorser, thereby became discharged.

*C. O'Conor,* for the defendant in error. 1. The case of *Hall* v. *Newcomb,* (7 *Hill,* 420,) has determined that a person becoming surety for another, in the manner adopted in this case, must be treated and charged as an endorser. 2. The note in question having been given and dated at New-York, and both maker and endorser having been domiciled out of the .United States, (viz. in Mexico,) at the maturity of the note, the plaintiff below was excused from making a regular demand, and from giving notice of non-payment. (*Chitty on Bills,* 8*th Am. ed.* 400, 485, *note e, and cases cited. Anon. Ld. Raym.* 743. *Magruder* v. *Bank of Washington,* 9 *Wheat. Rep.* 598. *Anderson* v. *Drake,* 14 *John. Rep.* 117. *Geer* v. *Lybrand,* 3 *Ohio Rep.* 319. *Dennie* v. *Walker,* 7 *New-Hamp. Rep.* 200. *Hepburn* v. *Toledans,* 10 *Martin's Rep.* 643. 2 *Louis. Rep.* 511, *N. S. Moore* v. *Coffield,* 1 *Dev. Law Rep.* 247. *Taylor* v. *Snyder,* 3 *Denio,* 145.) Where a maker of a note changes his residence, if it be to another place within the state, the holder must demand payment, and give notice of non-payment. But the rule is otherwise if he crosses the state line. If the principle of requiring notice to be given to parties residing in foreign countries be established, it will apply as well to short notes, notes having but a few days to run, as to long notes. If the rule is to be extended to foreign countries, it certainly must be confined within *certain* limits. And how are the courts to draw the line? Is it to be between civilization and barbarism?

Gilmore *v.* Spies.

Or is distance to be the test? Or, is the rule to be extended only to commercial countries? Suppose the maker, or endorser, resides in a country in a state of war, and actually under military discipline. How is notice to be given in such a case? Numerous other difficulties might be mentioned as attending the extension of the rule to foreign countries. We should only compel a party to go so far, in order to give notice, as our laws will afford him a protection.

When the maker or endorser resides in a foreign country when the note falls due, a demand is not necessary. And if demand is not necessary, notice of non-payment is not; for the one is dependent upon the other. 3. The endorser Gilmore was liable to Spies, his immediate endorsee, under the common counts, which are included in the breaches assigned. (*State Bank* v. *Hurd,* 12 *Mass. Rep.* 172. 1 *Cowen's Treatise,* 232. *Grant* v. *Vaughan,* 3 *Burr.* 1525, *approved in* 12 *John. Rep.* 95. *Mandeville* v. *Riddle,* 1 *Cranch,* 95.) 4. The ground of variance was not taken below, with sufficient distinctness. (*Watson* v. *McLaren,* 19 *Wend.* 559, 563. *Pomeroy* v. *Underhill,* 7 *Hill,* 388.)

BY THE COURT. The case of *Hall* v. *Newcomb,* (3 *Hill,* 233,) and same case in error, (7 *id.* 416,) has settled the question with respect to the effect to be given to such an endorsement as was made by Gilmore upon the note in question. In the absence of clear and direct evidence of an intention to become a joint debtor, or guarantor of the note, the party here, by putting his name upon it, (the note being drawn as a negotiable note,) can be regarded only in the light of an endorser, and as assuming no other responsibility than that which an endorsement of a negotiable note imports. In this case there is no evidence to show that Gilmore intended to become bound in any other capacity, or that the creditor, Mr. Spies, expected any thing more of him.

Such being the case, the next question is, whether Mr. Spies could, under the circumstances, dispense with a demand or presentment for payment when the note fell due, and with due

Gilmore *v.* Spies.

.notice of non-payment to the endorser, and still hold the endorser?

The note was made and endorsed in the city of New-York, where it bears date. It was drawn payable six months after date, but no place of payment is designated in the note. Gilmore endorsed it for the accommodation of Furlong, the maker. Both maker and endorser were, at the time, in the city of New-York, though they were residents of Matamoras, in Mexico; and the fact that they resided at Matamoras, and were doing business there, at the time of giving the note, and at the time it fell due, was well known to Mr. Spies. Yet he took no steps to have the note presented for payment at Matamoras, when it became payable, but kept it in his own possession in the city of New-York. He however gave notice, by letters written immediately after the maturity of the note, to both Furlong and Gilmore, that the note was due and was not paid; which letters were transmitted by the first vessel that could be found going from New-York to Matamoras, and which left New-York about a week after such letters were written.

This was not such a demand and notice of non-payment as the law requires, to charge the endorser. The note, although made and dated in New-York, was not by its terms payable there. The creditor did not ask for such a stipulation in the note, and the circumstance that the maker resided in a foreign country is no excuse for not following him with the note, so far as the endorser is concerned; unless the payee or holder protects himself from the necessity of doing so, by specifying some other place of payment, in the body of the note. No case has been shown, either in England or this country, in which the law has been held otherwise. On the contrary, the law as laid down in the case recently reported of *Taylor* v. *Snyder*, (3 *Denio*, 145,) we think shows very correctly and conclusively, that under circumstances like the present, it was the duty of Mr. Spies to present the note for payment at the known place of residence of the maker, though in a foreign country, if he meant to hold the endorser. We think, therefore, that the superior court erred, and that their judgment must be reversed.