## Waterbury *vs.* Sinclair and others.

Where a promissory note was made by D. payable to W. or order, and before the delivery thereof to the payee it was indorsed by S., to enable D. to obtain credit with W. *Held* that S. was liable as indorser, to the payee, upon proof of presentment, non-payment and notice.

*Held also*, that no indorsement by the payee was necessary, in order to perfect his rights. His rights accrued when the note was delivered to, and accepted by him, and were in no manner dependent upon any additional indorsement.

The rule that the payee must first indorse a note, is founded upon the fact that he alone can transfer it: when there is no transfer the reason of the rule fails, and it is therefore inapplicable.

Where in an action against an indorser, the complaint alleges that the defendant agreed to guaranty the payment of the note, if that allegation is not made out, it may be disregarded as surplusage.

DEMURRER to complaint. The complaint alleged that on the 9th of November, 1855, the defendant George Dick was indebted to the plaintiff in the sum of $308.42 for rent, and upon a promissory note made by the defendant; that for the purpose of securing the said indebtedness, and also the further sum of $100 which would become due for rent, on the 1st of February then next, and in consideration of the forbearance of payment by the plaintiff, and as an inducement for

the plaintiff to allow the said Dick to remain in posesesion of the premises rented, Dick agreed to make and deliver to the plaintiff his promissory note, indorsed and guarantied to the plaintiff by the defendant William Ann Sinclair, then a *feme sole*, and known by the name of William Ann Lawson, payable in three months, for $413.82, being the amount of said indebtedness, with interest, and the said rent; and that the said William Ann Lawson, with a full knowledge of the above facts, and for the same consideration, agreed to indorse and guaranty said note to the plaintiff. The complaint further alleged that in pursuance of said agreement, Dick, on the said 9th of November, 1855, made his promissory note in writing, bearing date on that day, whereby, for value received, he promised to pay, three months after the date thereof, to the plaintiff or order, the said sum of $413.82 for value received, at No. 190 Pearl street in the city of Brooklyn; and the defendant, William Ann Sinclair, indorsed the same, by the name of W. A. Lawson, and the same was afterwards duly delivered to the plaintiff, who thereby became, and ever since has been, and now is, the sole owner and holder thereof. The complaint then alleged presentment of the note for payment, on the day it became due, refusal of payment, protest and notice to the defendant W. A. Lawson. That since the note became due, and during the year 1857, the defendant William Ann Lawson married the defendant Sinclair, and was now his wife; and that no part of the said note had been paid to the plaintiff.

The defendants, Sinclair and wife, demurred to the complaint, and assigned as ground thereof, that the same did not state facts sufficient to constitute a cause of action.

*Theodore F. Jackson,* for the plaintiff.

*J. Paulding,* for the defendants.

S. B. STRONG, J. This is an action on a promissory note, by the payee against the maker and indorser, who was a *feme*

Waterbury *v.* Sinclair.

*sole* when she indorsed the note, but has since married, and her husband. The note was payable to the plaintiff, or his order, three months after its date. It was partly for a debt from the maker to the payee, existing at the time, and partly for prospective rent, and was made and indorsed pursuant to an arrangement between the maker and the payee, to extend the time for the payment of the debt, and to permit the continued occupancy of the demised premises, which was known to the indorser. It was indorsed in blank before it was delivered to the plaintiff. The note was presented to the maker when it became due, and payment was refused. It was thereupon protested, and due notice was given to the indorser.

As the note was negotiable, and there is no express engagement by Mrs. Sinclair, as guarantor, she must be considered as an indorser only. The allegation, in the complaint, that she agreed to guaranty the payment of the note, is not, therefore, made out; but as that is coupled with the averment that she agreed to indorse it, what is said in reference to the guaranty may be considered as surplusage. The plaintiff can sustain his suit if he should prove enough of the averments in his complaint to maintain an action, although he may fail in establishing the whole.

The main question is, whether one who has indorsed a note, before delivery, can be made liable to the payee who has not indorsed it. That one may become an indorser under such circumstances, appears to be well settled. An indorsement by the payee is undoubtedly essential to a valid transfer of the note when it is payable to his order; and when he actually indorses it, I cannot see that he can maintain an action upon it against a subsequent indorser. That, if permitted, would be an invasion of the usual order of liability. The idea of the late chancellor, that a subsequent indorser may be rendered responsible to a prior one, by an indorsement by the latter without recourse to him, and a delivery of the note to some nominal plaintiff, who might prosecute for him, was dismissed when it was advanced by a learned member of the court for

the correction of errors, and at any rate is not now considered to be sound law. That any one who writes his name upon the back of a negotiable note, not then indorsed by the payee, assumes an inchoate liability, there can be no doubt. If the name and signature of the payee should afterwards be prefixed, that would be clearly all that would be formally necessary to consummate the responsibility. That would, as I conceive, be absolutely necessary in all cases where the holder was to be any other than the payee. But is there the same, or any, necessity for an indorsement by the payee when there is a general indorsement by another designed for his benefit? What is the general engagement by the indorser? It is to pay the note to any subsequent holder, provided it is duly presented to, and payment received by, the maker, and due notice of non-payment is given. It can make no difference, as I conceive, whether the subsequent holder is the payee, or another. There is the same equity in favor of either, and there is no technical rule against the liability to the payee, unless he is also the prior indorser. An indorser of a promissory note is considered in the light of a drawer of a bill of exchange upon the maker, to pay the amount to any subsequent holder, whether named or not. (*Chitty on Bills*, 155, 156, *and the cases there cited.* Surely he can make the bill of exchange payable to the person named in the body of the note as the payee. There is no principle applicable to commercial paper which forbids that. That it may be an order upon the maker to do what he at the same time engages to do, can make no difference. That is done, or is the effect of what is done, in other cases; as where there has been a previous promise of the drawee of a bill of exchange to accept it, or where a bill payable at a future day has been accepted. There are, in such cases, both an order from one and a promise by another, upon such order already made, or to be made, to pay. In substance, the note in question contains a promise to pay money to the payee, upon the order of the indorser; and that under such circumstances an action may be main-

tained by the payee, against the indorser, was decided in the case of *Willis* v. *Greene,* (10 *Wend.* 516.) There is no necessity for proving a valid consideration for the obligation of an indorser, and certainly none for reducing the consideration to writing. He is not considered as entering into a special promise to answer for the debt, default or miscarriage of another person, within the statute. An entire want of consideration might be available between the original parties, at common law, but in this case enough is averred to cause the liability of an indorser. The case of *Gilmore* v. *Spies,* (1 *Barb.* 158. 1 *Comst.* 321,) was much like that now under consideration, except that no notice had there been given to the indorser. He escaped solely on that ground. The counsel for the defendant, in that case, who was an acute and experienced lawyer, contended before this court that the indorser was "only liable on condition of a demand of payment at the expiration of the days of grace, and notice of non-payment." He did not contend, nor did this court assume, that the indorser would not have been liable if demand of payment had been duly made, and notice of non-payment had been given. If in that case the indorser had not originally assumed any liability to the payee, that would have been a sufficient defense for him, and it would have been unnecessary to consider any other. When the case was before the court of appeals, the defendant was considered by Judge Bronson to be an indorser, and as such to be entitled to notice of non-payment. Such was also the opinion of Judge Jewett; but Judge Gardiner dissented, and held that the defendant by his indorsement contracted that if the note was duly demanded of the maker, and not paid, or if, after the exercise of due diligence, no such demand could be made, he would, on due notice, pay the amount to the indorser or holder. In that case, as in this, the action was by the payee of a note against the indorser; and neither counsel nor any of the judges supposed that the indorser did not assume any liability to the payee. In the case of *Herrick* v. *Carman,* (12 *John.* 159,) the note, it is true, had been

indorsed by Herrick when it was delivered to the payee; but they subsequently prefixed their indorsement, and then sold it to Carman, at a large discount, the facts being known to him. Chief Justice Spencer remarked that it did not appear that Herrick indorsed the note for the purpose of giving the maker credit with the payees, or that he was in any wise informed of the use to which the maker intended to apply the note; and that in the absence of any proof to the contrary, the court must *intend* that Herrick meant only to become *second* indorser, with all the rights incident to that situation. The chief justice adds, that Herrick must have known that his indorsement would be nugatory unless preceded by that of the payees of the note. He cites no authority for this, and it is to be presumed that what he said was in reference to the circumstances of that case, and that he did not intend to lay down the rule as of universal application. The case of *Ellis* v. *Brown*, (6 *Barb.* 282,) was where there had been a transposition of indorsements, and the question was, whether in such case an indorsee in effect could recover against his indorser, and it was rightly decided that he could not. That is certainly the rule when the payee of the note actually indorses it, or when his indorsement is necessary to give it effect in the hands of him who seeks to enforce it. But in the present case no indorsement by the payee was necessary, in order to perfect his rights. His rights, whatever they were, accrued when the note was delivered to, and accepted by, him, and were in no manner dependant upon any additional indorsement. What they were has been already shown. I repeat, that the rule that the payee must first indorse a note, is founded upon the fact that he alone can transfer it; and that where, as in this case, there was no transfer, the reason of the rule fails, and it is therefore inapplicable.

There must be a judgment for the plaintiff, with leave to the defendants, Sinclair and wife, to withdraw their demurrer, and answer in twenty days, upon the payment of costs.

[KINGS SPECIAL TERM, November 2, 1857. *S. B. Strong*, Justice]