OPINION OF THE COURT — by the
Horn EDWARD TURNER.
This is a motion made, at the last May Term of the circuit court of Wilkinson county, for the application of money made by the sheriff on the sale of the property of William Hunter, against whom the sheriff held several executions; and among others, that stated above ofH. Hunter’s administrators vs. William Hunter and T. B. Dougharty — the latter being the security of William Hunter.
The following facts appeared on the motion being made; — That on or about the 14th of January, 1823, Wiliiarh Hunter made his note of hand, with T. B. Dougharty security, for 1722 dollars, payable six months after slate, to William Yerby, administrator of the estate of Henry Hunter, de *195 ceased — that said bond was given in consideration of slaves bought by William Hunter, of said administrator — that on the 2ist of February, 1823, the said William Hunter mortgaged to said Dougharty, the said slaves, and a tract of land, being the same slaves and land levied on and sold under the above execution, to indemnify the said Dougharty for giving security as aforesaid.
That on the 8th of May, 1823, R. M. D. J. Elliott, obtained judgment against said William Hunter, for 104 dollars and 47 cents, besides costs— that on the 13th of May, 1823, John Hudry obtained judgment against said William Hunter, for407 dollars and 60 cents, besides costs — that on the 4th of May, 1824, James T. Crifford obtained judgment against said William Hunter, for 165 dollars, besides costs — that on the 3d of February, 1825, Henry Hunter’s administrators obtained judgment against said William Hunter and -T. B. Dougharty his security, for 1942 dollars and 58 1-2 cents, besides costs, being the aforesaid debt, for which fhe bond or note first above named was given — that executions regularly issued on these several judgments after they were rendered — that Hudry’s execution was levied on the land in question, but not sold previous to February 1825 — that executions on all the above stated judgments issued, returnable to May Term, 1825; on all of which the sheriff makes the same return, which is in substance as follows, to wit: — That he levied on the 7th of March, 1825, on 449 acres of land, which was sold to James Quinn, for 500 dollars, and on 4 negroes, slaves, which were sold to William and Michael Dickson, for 1188 dollars, and there appearing a doubt which execution is entitled to the credit — and being ncr lifted, as to the appropriation, that he held the money subject to the order of the court. It further appeared, that this property was surrendered by said Dougharty to the sheriff, to be sold to satisfy the execution of H. Hunter’s administrators vs. Hunter and Dougharty, aforesaid, and required the money to be applied in satisfaction thereof, and consented to the sale for that purpose, and that only — fand it. is admitted that W. Hunter is insolvent.
It does not appear to the court, at what time Elliott’s execution first issued, but is it conceded that the several judgments aforesaid, hind the estate of William Hunter from their respective dates, or if they do not, that exe *196 cutions thereon, having been in the hands of the sheriff previous to even the judgment of Hunter’s administrators vs. Hunter and Dougharty; they all have precedence of the latter, and must be first satisfied out of said proceeds of sales.
Upon this statement of facts, it is contended, by the counsel of T. B. Dougharty, that his mortgage bound this property, thatasit was sold by his consent, to pay the debt for which the mortgage was given — that as it was produced and surrendered by him for that purpose, he is entitled to the. benefit of the credit for the proceeds of the sale thereof, on the execution against Hunter and Dougharty.
On the other hand it is contended, that Dougharty, being but a mortgagee of said property, his interest therein was not liable to sale on execution — that Hunter’s interest as mortgagor was liable to be sold; that the previous judgments and executions were a lien upon Hunter’s inter-. est in the mortgaged estate, and that the same being sold, and the money in the sheriff’s hands, they are entitled to satisfaction; and they cite 4 Johnson’s Rep. 41; 1 Caine’s cases in E. 47; 5 Johnson’s Rep. 335.
The importance of this case is felt, more in relation to the danger of Dougharty’s situation, than as it regards the legal principles therein involved.
If Wiliam Hunter was solvent,it would matterbut little how the case resulted. But as he is insolvent, and Dougharty being likely to suffer innocently and to pay the debt of his principal when he had taken honest and timely steps to secure himself against his friendly act in going Hun-, ter’s security.
I have labored to find some ground or principle on which he can be protected. His case is worthy of the reflection and research which I have given it; but it is in vain. It is not in the power of this court under present circumstances to relieve him.
I will not say that his case, is ultimately hopeless. He may yet find relief in anothér way, or before another forum; and although we cannot advise him as to his remedy, or whether he has any, we will not say to him that he has no rights, no remedy left.. He appears to the court to have acted fairly in the transaction, but to have been ignorant of his rights, There can be no question at this day, but that an equity of re *197 demption is liable to sale under execution. The plaintiffs in the former, or elder executions, had the right to require the sale of that equity and interest which William. Hunter had in the aforesaid property, and having been sold, they are entitled to so much of the proceeds as will satisfy their-several executions and costs. Henry Hunter’s administrators had also, the right to sell the same equity, or what remained after satisfying the-elder claims, and the sale having been one and entire, let the residue off the purchase money be applied to the credit of the last execution.
I consider the law equally well settled that the mortgagees’ interest in mortgaged property, is not liable to execution — that the sheriffcould only sell and convey the equity of redemption of William Hunter; or in other words, all the right, title, &c. of William Hunter, in the land and slaves.
Let the money be applied according to the principles laid dawn; in this .opinion.