### Ellis *vs.* Brown.

Where S. and G. made a promissory note, payable to the order of N. D. & Co., and before delivering it to the payees, the makers, at the request of N. D. & Co. procured it to be indorsed by B., who indorsed it for the accommodation of S. & G., and for the purpose of giving them credit with the payees; whereupon N. & D. took the note and advanced property thereon to the makers, and subsequently took it up, and indorsed the same to E.; *Held*, in an action upon the note, in the name of E., for the benefit of N. D. & Co., brought against B. " as a party to the note," that B. could not be made liable as *guarantor* or *maker* of the note.

*Held also*, that B. was not liable to N. D. & Co., in an action brought upon the note as *indorser* thereof.

A first indorser can not maintain an action against the second, " as a party to the note," either directly or indirectly.

A person who guaranties a note is in no sense a party to the note.

A guaranty is a special contract, and must be specially declared on.

The law will not imply a contract of guaranty when the evidence shows that the defendant undertook to be bound only as indorser.

When parties have agreed upon an express contract, the court will not *imply* one of a different legal effect and obligation. *Per* Gridley, J.

Previous to the indorsement of a negotiable promissory note, the property of the note is in the payees; and until they have indorsed it to some other person and thus transferred the legal title to him, no indorsement by such person will be

Ellis *v.* Brown.

operative as such, or convey any title to the note, so as to enable the holder to sustain a suit thereon, in his own name.

If the payees of a note indorse the same, generally, *after* it has been indorsed by another person, they will be liable as first indorsers, and the other person as second indorser.

In an action by the holder of a note against the second indorser, it is a perfect defence to show that the plaintiff has paid no consideration for the note, but has received it from the payees merely to collect for their benefit.

Although there is a strong analogy between an indorsed note and a bill of exchange, yet an indorsee of an ordinary promissory note can not declare upon it as an accepted bill of exchange, and recover.

MOTION by the plaintiff for a new trial. The cause was tried at the Herkimer circuit in October, 1848. The action was brought by the plaintiff as indorsee, against the defendant as "a *party* to a promissory note," which was declared in the notice subjoined to the declaration, to be "the *only cause of action* on which the plaintiff relies." The note as set forth and as proved on the trial, is in the following words:

"$330.                    Providence, February 1st, 1845.

Six months from date, for value received, we promise to pay to the order of Newell, Daniels & Co, three hundred and thirty dollars, at either bank.     (Signed)     STONE & GREENE."

     (Indorsed)     "Orrin Brown.

               Newell, Daniels & Co.

It appeared in evidence that the note was made at Newport, Herkimer county, where the makers of the note, and the defendant, resided. Newell, Daniels & Co. were leather dealers, and resided at Providence, Rhode Island. In the month of December, 1844, Stone & Greene, who were also dealers in leather, addressed a letter to Newell, Daniels & Co. proposing to purchase a quantity of hides on their own note at 6 months' credit. In their answer to this proposition Newell, Daniels & Co. promised to furnish the hides, if Stone & Green "would agree to send their note at 6 months indorsed by Orrin Brown." And thereupon the defendant Brown, on the application of Stone & Greene, indorsed the note, which was already drawn and signed by the makers; saying at the time that he had no objection to indorse such a note; for he was really indorsing

---
Ellis *v.* Brown.
---

for Newell, Daniels & Co., and he presumed that the latter would not accept the note. There was evidence tending to show that Brown knew that his name as indorser had been required by N. D. & Co., and that he took from Stone & Greene a bill of sale of the hides, for his security; though it appeared that the hides never came into his hands. They had in fact been shipped to Stone & Greene, but had not arrived when the note was made and indorsed and bill of sale executed. Immediately after the indorsement of the note, it was transmitted by Stone & Greene to Newell, Daniels & Co. who, after indorsing their names upon it, procured it to be discounted and received the avails thereof, at the Tradesman's Bank, Providence. Notice of this discount was given to the defendant and to Stone & Greene, and the note not being paid at maturity, the same was protested and taken up by Newell, Daniels & Co., who caused a suit to be brought upon it in the name of the plaintiff, for their own benefit. The hides were manufactured into leather and sent to Newell, Daniels & Co., to be sold on commission. They were thus sold by N. D. & Co. and the proceeds applied upon a prior debt of Stone & Greene. The above evidence tending to show that the name of Brown was placed on the note, with the view of securing the payment of the note to N. D. & Co. was received provisionally upon the trial of the cause by the justice, who, after hearing the whole case, nonsuited the plaintiff, to which decision the plaintiff's counsel excepted.

*S. H. Hammond,* for the plaintiff.

*F. Kernan,* for the defendant.

GRIDLEY, J. Upon the facts in this case the question is whether the plaintiff was entitled to recover, or whether the nonsuit was properly granted. In considering this question it must be borne in mind that this action is not brought for *money paid* by the firm of Newell, Daniels & Co. as it manifestly could not be in the name of the present plaintiff, but is instituted

Ellis *v.* Brown.

upon the note itself as the foundation of the action, and against the defendant as a "*party to the note.*"

1. It is obvious, therefore, that the action can not be maintained against the defendant as a *guarantor* of the note. A person who guaranties a note is in no sense a party to the note. (*Story on Prom. Notes,* § 3; 5 *Wend.* 307; 2 *Hill,* 190.) A guaranty is a special contract, and must be specially declared on. (1 *Chit. Pl.* 339.) And it is only where the person called the guarantor has been held by the court to be, in legal intendment, the maker of the note, that a different rule has prevailed. Again; if the indorsement were to be regarded as a guaranty, such guaranty was made to Newell, Daniels & Co., and the action should have been brought in their names, and not in that of Ellis. (*See Lamourieux* v. *Hewit,* 5 *Wend.* 307; 2 *Hill,* 192.) To this we may add that the law will never imply a contract of guaranty, when the evidence shows, as it does here, that the defendant undertook to be bound only as indorser. (*Seabury* v. *Hungerford,* 2 *Hill,* 80.) Without pursuing this point farther it may be safely assumed that the defendant is not liable in this action as a *guarantor* of the note.

2. The next question is whether he can be made liable as a *maker.* Now it is not to be denied that there are cases in which a party *indorsing* a note has been held liable as *maker* of a separate note to be written over his indorsement, and sometimes as joint and several maker of the note on which his name is written; for the purpose of carrying out what was regarded as the *general* intention of the parties, which intention they had failed to express in the written instrument itself. (*See* 1 *Hill,* 256; 4 *Id.* 421; 3 *Id.* 585, 9; 2 *Id.* 663; 19 *Wend.* 203.) We do not mean to deny, and it is not necessary that we should do so, that it is allowable to write a note over the name of a party when the facts show that it was the intention that he should be bound as a maker. But some of the cases have gone beyond this reasonable rule of limitation; and have held parties liable, not upon the legal interpretation of the instrument they had signed, nor upon any parol contract which they had made; but upon contracts which the courts have made for the parties, to

Ellis *v.* Brown.

remedy the hardship of particular cases. The mischief arising from this loose construction of commercial paper had become so intolerable that the courts have, for some years, been retracing their steps and holding parties to the contract which they themselves have made, according to this legal interpretation. In *Hall* v. *Newcomb*, (7 *Hill*, 418,) the chancellor, in delivering the prevailing opinion in the court of errors, says, "The courts have gone far enough in repealing the statute to prevent frauds and perjuries, by introducing parol evidence to charge a mere surety for the principal debtor, by showing that his written agreement was something else than what, upon its face, it purports to mean." Again, in 1st Comstock's Reports, 324, the court held this significant language, "There are a few cases in the books which hold, in effect, that a written contract of one kind may be turned into a contract of a different kind, by parol proof concerning the intention of the parties; that the indorser of a promissory note may, under certain circumstances, be charged as *maker* or guarantor; and that the guarantor of a promissory note may be sometimes charged as maker or indorser. Although these cases stand upon no principle, it has been a work of some time and difficulty to get rid of them. The court of errors was at first equally divided on the question, but after a second argument the court decided by a pretty strong vote to uphold contracts as they had been made by the parties, instead of making new contracts for them;" citing *Hall* v. *Newcomb*, (7 *Hill*, 416.) In the case of *Hall* v. *Farmer & Doolittle*, (not yet reported,) the plaintiff sought to recover against the defendants, who, with the view of securing a debt due to Hall from Kathern & Doolittle, *indorsed* a guaranty on a note made by the latter firm, and payable "to *Luther Hall*, to the order of *Kathern & Doolittle*." An attempt was made to charge the defendants as *makers* or *guarantors*, for the purpose of carrying out what was supposed to be the general intent of the parties. The court, however, held that the action could not be supported upon the *guaranty;* for the reason that it was void under the statute of frauds, in not expressing the consideration on which it was founded; and that the guaranty could not be

treated as a promissory note, because a guaranty is in its nature a conditional contract binding on the guarantor only upon the default of the principal debtor; whereas it is essential to the very nature of a promissory note that it should be payable absolutely and at all events.

If these cases be good law, then, notwithstanding the parol testimony should be held to have been properly admitted in this case, to show what contract the parties intended to make, it is quite clear that the defendant can not be held liable as *maker* of the note in question. He was not only an *actual indorser* in fact and by the *legal construction* of the written paper on which the suit is brought, but the letters of Newell, Daniels & Co. as well as of Stone & Greene, show that it was intended by all parties that he should be an *indorser*, and nothing else. (*See the opinions in the cases of Seabury* v. *Hungerford*, 2 *Hill*, 80, *and Miller* v. *Gaston*, *Id.* 188.) These cases are direct and conclusive authorities to show that when the parties have agreed upon a contract of a particular kind, by which a demand shall be secured, the courts will not allow a contract of a different kind to be written in lieu of that which the parties have made. In other words, that when the parties have agreed upon an express contract, the court will not *imply* one of a different legal effect and obligation. It is to be assumed, therefore, as an incontrovertible fact that the defendant never contracted to be holden as a joint and several maker of the note in question, with Stone & Greene. And we have already seen that unless he did so he is not a party to *this note*, as maker, and therefore can not be made liable as *maker*, under this declaration. This very question is virtually decided in *Hall* v. *Newcomb*, (7 *Hill*, 416.) If this suit had been brought in the names of Newell, Daniels & Co. instead of Ellis, the cases would have been alike. So far as the question whether the party who placed his name on the back of the note can be made liable as a *maker* of the note, is concerned, it is unimportant whether the suit is brought in the name of Newell, Daniels & Co. or in that of the plaintiff Ellis. It may be said in this case, as the chancellor said in *Hall* v. *Newcomb*, " that when a man writes his name in blank

upon the back of a promissory note, he only agrees that he will pay the note to the holder, on receiving due notice that the maker, upon the demand made at the proper time, has neglected to pay it. The case of *Gilmore* v. *Spies*, (1 *Barb. Sup. C. Rep.* 158,) affirmed in the court of appeals, (1 *Comstock*, 321,) is also a direct and conclusive authority that the defendant can be made liable *only* as indorser of the note. The principle decided by the court is laid down in the following explicit terms. " In the absence of clear and direct evidence of an intention to become a joint debtor or guarantor of the note, the party, by putting his name on it, (the note being drawn as a negotiable note,) *can be regarded only in the light of an indorser, and as assuming no other responsibility than that which an indorsement of a negotiable note imports.*" In the case we are now considering we have already seen that there is not only an absence of all evidence that the defendant intended to be bound as a maker, but the most explicit evidence that it was the intention of all parties that he should be bound as indorser.

3. The only remaining question is, whether the defendant is liable as indorser. On the face of the note, there seems to be no difficulty in sustaining the action. It is the case of an indorsee seeking the usual remedy against his immediate indorser. Newell, Daniels & Co. are the first indorsers, the defendant the second indorser, and the plaintiff the holder of the note. It is however, a part of the case that the note is owned by Newell, Daniels & Co. who took it up at the bank and have prosecuted it in the name of the plaintiff for their own benefit. Unless, therefore, Newell, Daniels & Co. could recover, upon the facts of this case, the plaintiff can not; for he stands in their shoes. The question then comes to this: Whether a prior indorser can recover against a subsequent one. The indorsement of Brown was inoperative, as such, until Newell, Daniels & Co. had indorsed their names upon it. In the language of Chief Justice Spencer, in *Herrick* v. *Carman*, (12 *John.* 160, 161,) " the fact of his indorsing first in point of time can have no influence; for he must have known, and we are to presume he acted on that knowledge, that though the first to indorse, his

indorsement would be nugatory unless preceded by that of the payees of the note." The note was, in legal intendment, the *property* of Newell, Daniels & Co., and Ellis could not derive the legal title to it, so as to sustain a suit in his name, upon it, until they indorsed it. The title did not pass by delivery, as it would have done, had it been payable to bearer, but could only be transferred by indorsement. In the case of *Herrick* v. *Carman*, (10 *John.* 224,) it was decided that in an action by Carman, the second indorsee, against Herrick, his immediate indorser, on a note executed by " John Ryan to Lawrence, Carman & Co. or order," it was a perfect defence to show that the note was delivered to Carman, the plaintiff, by the payees, as their agent, to collect the same, and without any consideration having passed between those parties. The court say, in the conclusion of their opinion, " The indorser can not sue the indorsee, and this must have been a contrivance to effect that object indirectly." Now this case is directly in point; for here the plaintiff has paid no consideration for the note, but received it from the payees, to collect for their benefit. It is therefore a contrivance by which Newell, Daniels & Co. are indirectly suing their indorsee, the defendant; which the court in that case, say can not be done. That case came before the court again, after another trial, in the 12th of Johnson's Reports, 159. On the second trial it appeared that Carman, the plaintiff, was the owner of the note; having purchased it at a discount, with a full knowledge of all the facts, and *agreeing to take it on his own risk.* Upon this new state of facts, the court hold the following language : " we have already decided that the payees of this note could not, directly nor indirectly, recover on it. The defendant in error having purchased the note with a full knowledge of the facts, has virtually agreed not to resort to Lawrence, Carman & Co., and yet if he can sustain this suit he will in effect violate his agreement; for on this evidence Herrick, if obliged to pay the note, would have his remedy over against Lawrence, Carman & Company." In commenting on this case the chancellor (7 *Hill,* 420) says the payees of the note, who had received it on the credit of Herrick, had themselves made a general indorsement

Ellis *v.* Brown.

instead of a *restricted* one ; so that if Carman recovered against Herrick the original payees would be liable to him as first indorsers. In that case, the chancellor suggested a mode by which the payees of the note might have transferred it, so as to have entitled their indorsee to maintain a suit upon it without incurring a liability on their indorsement. I think the idea was suggested to the chancellor by a remark of Judge Cowen in *Dean* v. *Hall,* (17 *Wend.* 217.) The expedient is ingenious, and may be consistent with the intention of the parties as disclosed by the parol proof. It is this. Newell, Daniels & Co., when they received the note, should have indorsed it *without recourse.* That would have created a complete chain of legal title to the note, and would have enabled any bona fide subsequent holder *to* recover against the defendant without subjecting the payees of the note to an action at his suit. Now whether this expedient might have been successfully resorted to by Newell, Daniels & Co., it is not necessary for us to decide ; for they did not pursue the chancellor's advice. They made a *general indorsement* of the note ; the legal construction of which makes them liable as prior indorsers to the defendant. And that has been twice held to be a fatal objection to a recovery either directly or indirectly, by the payees against their indorsee. It is true that the court threw out a dictum in *Herrick* v. *Carman,* in relation to the liability of a party thus situated, if sued as *maker* or *guarantor.* But that a subsequent indorser could not be made liable on the contract implied from his indorsement, the case of *Herrick* v. *Carman* is an explicit authority, and is regarded by the chancellor as conclusive, in a case where the indorsement was general and absolute, and the action brought on the note, upon the contract which the law raises upon the naked indorsement of the indorser's name.

It is true that this point would have been a fatal objection to the right of the plaintiff to recover, in *Spies* v. *Gilmore ;* and it is equally true that it is not mentioned in the report of the case either in the supreme court or in the court of appeals. This omission may perhaps be accounted for by a remark at the close of the opinion of Judge Bronson. He says that the

cause was tried in the superior court on the doctrine, afterwards exploded, that Gilmore might be made liable as a maker or guarantor of the note. When the cause of *Hall* v. *Newcomb* was decided that ground failed; and the plaintiff was forced to make out the defendant's liability as an indorser, or be beaten.

There having been no demand or notice, in a case where the law required both, as a condition of the defendant's liability, it was unnecessary that the defendant should do more than to place his defence upon that conclusive ground. That ground was held to be sufficient, by the court of appeals, and I think no inference should be drawn from the silence of the judges upon a point not raised by counsel. The courts have not enjoyed sufficient leisure, of late, to discuss questions not raised by counsel, when they are able to place their decision upon other conclusive grounds that have been fully argued.

We have been reminded of the analogy between a promissory note after it is indorsed and an inland bill of exchange. And it is said that the defendant may be regarded as the drawer of a bill, Stone & Greene as the acceptors, Newell, Daniels & Co. as the payees, and the plaintiff Ellis as indorsee; and the cases of *Smallwood* v. *Vernon*, (1 *Strange*, 478,) *Ballingall* v. *Gloster*, (3 *East*, 482,) *Hill* v. *Lewis*, (1 *Salk*. 132,) *Dean* v. *Hall*, (17 *Wend*. 221,) and *Oakley* v. *Boorman*, (21 *Id*. 590,) have been referred to, to prove that position. These cases in fact show that the contract of indorsement, whether on a bill or note, is a new agreement between the indorser and indorsee; that there is a privity of contract between these newly contracting parties, and that therefore the indorsee may maintain an action against his immediate indorser, even where no action would lie against the prior parties to the bill or note. This is familiar doctrine; even the forgery of the maker's name to a promissory note is no defence which the indorser can set up against his indorsee. But I can not see how this principle can help the plaintiff. Suppose that Newell, Daniels & Co. were authorized to treat the defendant as the drawer of a bill of exchange, instead of the indorser of a promissory note, and to write over the defendant's name a bill of exchange directed to Stone & Greene,

requesting them to pay the amount of the note to Newell, Daniels & Co. or order, and suppose, further, that upon a declaration appropriately framed they could recover upon such bill. Yet they have not written out any such bill; nor have they declared on any such instrument. They have, on the contrary, brought their action in the name of the plaintiff, on the *original note*, made by Stone & Greene, and against the defendant " *as a party to that note.*" And they have no more right to resort to an imaginary bill of exchange, as the foundation of this action, than they would have if the present suit had been upon a bond instead of a note. But I cannot assent to the proposition that such a suit could have been sustained, upon the facts of this case. There is indeed a strong analogy between an indorsed note and a bill of exchange ; but I am yet to learn that an indorsee of an ordinary promissory note can declare upon it as an accepted bill of exchange, and recover. There would be some allegations in the count which it would be difficult to prove. The plaintiff would aver, among other things, that the defendant (the indorser) drew his bill of exchange directed to the drawees, (makers of the note,) and thereby requested the said makers to pay to the plaintiff or order a certain sum of money ; that afterwards the defendant delivered the said bill to the plaintiff and the plaintiff presented it to the drawees, (makers of the note,) and that they the said makers accepted the same, in writing, &c. Now no case has been cited to show that such a count has ever been held duly proved by such evidence as has been furnished in this case. I believe therefore that the defendant must be liable as an indorser, to Newell, Daniels, & Co., or the plaintiff must be defeated in this suit.

Bearing in mind that this suit is not brought by Newell, Daniels & Co. for money paid to the Tradesman's Bank in taking up the note, but is an action directly on the note, it follows that if Newell, Daniels & Co. can recover against the defendant, on his indorsement, there must be some way of framing a special count to meet the case. There is no better test of a right to recover than this; for pleading is no more nor less than an

orderly statement of the facts necessary to entitle a party to re-
cover. The pleader would begin by stating the making of the
note and the delivery of it to the payees, their indorsement and
delivery of it to the defendant, and his indorsement and deliv-
ery of it to Ellis the plaintiff. Such is the legal chain of title
to the note, and such is the legal intendment of the relative sit-
uation and rights of the parties. (*Oakley* v. *Boorman,* 21
*Wend.* 590. *Herrick* v. *Carman,* 12 *John.* 160.) Now if the
special count should state one fact further which is proved in
this case, (viz. that the suit is brought by Ellis for the benefit
of Newell, Daniels & Co.) the declaration would be bad on gen-
eral demurer, upon the authority of *Herrick* v. *Carman.* But
suppose we leave Ellis out of the case, and consider the action
as brought by Newell, Daniels & Co. against the defendant, on
his indorsement. How then will the declaration be framed?
Will it state that Stone & Greene made their note and deliv-
ered the same to the defendant, who indorsed it to the payees?
Now the very theory of an indorsement is that the indorser is
the owner of the note, and transfers by his indorsement the le-
gal title to the instrument, and undertakes to pay it if the ma-
ker does not, on due demand and notice. It will be seen, *first,*
that unless you take into the account the indorsement of the
payees the defendant never could get title to the note, and never
could transfer it. A stranger may *guaranty* a note, but no one
but the owner in legal intendment, can indorse it. *Secondly,*
if you *do* take into the account the indorsement of the payees,
then *they* are the prior indorsers, and the defendant the second,
and we have the case of the prior indorser suing his own indor-
see. The truth is, that no special count can be framed count-
ing upon an indorsement by the defendant to the payees, unless
it first states an indorsement by the payees to the defendant;
and unless that be *without recourse,* as the chancellor has sug-
gested it may be, there can be no recovery. The payees are
the *owners* of the note, by legal construction and intendment;
and before the defendant can indorse it to the payees, or to any
one else, the title to the note (which can pass only by indorse-

ment) must be transferred to him by the payees. In this con-
nection, it may be proper to remark, that the doctrine of a class
of cases of which *Suydam* v. *Westfall*, (2 *Denio*, 205,) is one,
has no application to the case at bar, and furnishes no author-
ity for changing the legal relation of the parties. That was an
action, not on the note, but for money paid. It is true, that in
an action for money paid by an accommodation maker, for an
indorser, whose proper debt it was to pay, the plaintiff may show
that he made the note for the accommodation of the indorser.
But it has not yet been held that the maker can bring an ac-
tion against the indorser *on the note*, and sustain the suit by
proving that he made the note for the indorser's benefit. It is
just as impossible for the first indorser to sustain an action
against the second, "*as a party to the note*," either directly or
indirectly. When a suit is brought *upon the paper itself*, it
must be sustained, if at all, upon the contract which the law
applicable to commercial paper raises between the parties.
Such a suit the plaintiff is endeavoring to sustain here, but the
attempt must fail, unless the well settled rules of pleading and
the well established principles of commercial law are suspended,
for the purpose of enabling him to succeed.

A desire to relieve against the hardship of particular cases
has led the courts, at different times, to well nigh construe away
the statute of frauds and the statute of limitations. And the
same motive has gone far towards breaking up the strict prin-
ciples of commercial law, and the venerable landmarks of the
law of evidence. The consequence has been to beget a degree
of confusion and uncertainty in the decisions upon these sub-
jects, which most strongly illustrates the wisdom of adhering to
settled principles, and has induced the courts to make a strenuous
effort to bring the law back to its original principles. It is not
a new thing that parties sometimes are compelled to suffer
through the ignorance and negligence either of themselves or
those who undertake to secure their rights. If the law be un-
wise, and productive of injustice or inconvenience, it should be

Ellis *v.* Brown.

amended; but it should not be perverted, to afford relief to those who have either neglected or violated its provisions.

For the above reasons the motion for a new trial should be denied.

C. GRAY, J., and ALLEN, J., concurred.

PRATT, P. J.    This action was brought against the defendant to recover the amount of a promissory note made by the firm of Stone & Greene to the order of Newell, Daniels & Co. for whose benefit this action was brought, and indorsed before delivery to them by the defendant.   The note has also been indorsed by Newell, Daniels & Co.; so that upon the face of the paper there is no technical difficulty in the way of the plaintiff's sustaining his action.   I shall, in the consideration of the questions raised upon the trial of the cause, assume that Brown indorsed the note for the purpose of giving the makers thereof credit with Newell, Daniels & Co. the payees, and that they parted with their property which was the consideration of the note on the faith and credit of such indorsement; as there was sufficient evidence to entitle the case, upon this point, to be submitted to the jury.

The first question, therefore, which I shall consider, is whether the indorsement of the defendant, given under the circumstances and for the purposes above assumed, is available to Newell, Daniels & Co. in any form of action.   And I must confess that it struck me, upon the argument, as somewhat singular that we should be called upon at this day to consider this question as one of doubt or difficulty.   Yet the entire defence is based upon the assumption that the indorsement of the defendant, at the time it was made, was utterly void for all the purposes contemplated by the parties to the note.   As my brethren have adopted this view of the case, I have been led to examine with considerable care the decisions of this and the neighboring states, as well as those of England.   And whilst I have found the decisions very numerous holding that an indorsement made under such circumstances is a valid and available security in the hands

of the payees of the note, I have not been able to find any where a single dictum holding a contrary doctrine. It is true that the courts have differed somewhat as to the nature of the contract thereby created, and the form of the count necessary in an action to enforce it; yet I have been unable to find any difference of opinion in regard to the ultimate liability of the indorser. And it is difficult for me to perceive why there should be any difference of opinion. The indorser puts his name upon the note as security for the makers to the payees, to induce them, upon the faith of that security, to part with their property, and upon the faith of such security they do part with it. So long as no positive rule of law is violated, nor any principle of public policy impaired, there is no reason why the contract should not be construed so as to give effect to it according to the intention of the parties. *Ut res magis valeat quam pereat.*

In Massachusetts it is settled by an overwhelming number of cases that where the indorser, in such cases, is privy to the original consideration, and his indorsement contemporaneous with the making of the note, he is liable as a joint and several maker, and this as well when the note is not negotiable as when it is payable to the order of the plaintiff. (3 *Mass. Rep.* 274. 11 *Id.* 436. 9 *Id.* 314. 8 *Pick.* 423, 122. 19 *Id.* 26. 24 *Id.* 64. 4 *Id.* 311, 385. 3 *Metcalf,* 275.) In the case of M*etts* v. *Bird,* (11 *Mass. Rep.* 436,) a case in all respects very like the present, Chief Justice Parker, in delivering the opinion of the court, said—" It is manifest that the defendant intended to make himself liable by his indorsement. What then was the effect of his signature? It was to make himself liable to pay the contents of the note."

The same rule has been followed in most of the New England states. (6 *Conn. Rep.* 315. 7 *Id.* 301. 11 *Id.* 440. 9 *Verm. Rep.* 345. 12 *Id.* 219. 16 *Id.* 554. 17 *Id.* 285. 11 *N. Hamp. Rep.* 385.) Many of the other states have adopted the same rule. (2 *McMullin,* 213. 1 *Nott & McCord,* 129. 2 *McCord,* 388. 9 *Ohio Rep.* 39. 13 *Id.* 328.) In others of the states their courts have held the indorsement to amount to a guaranty of payment; thus following the lead of the earlier decisions in

Ellis *v.* Brown.

our own state. (4 *Watts,* 448. 9 *Id.* 353.) In others, again, their courts have held the party liable, either as maker or guarantor according as the intention of the parties appears by the proof; but in no case have they held the contract void. (4 *Watts,* 448. 9 *Ohio Rep.* 39. 2 *McLean,* 553.) In our own state the first case I have found where the question was discussed was that of *Herrick* v. *Carman,* (12 *John.* 159.) In that case there was no proof that Carman indorsed the note for the purpose of giving the makers credit with the payees, and the court held that prima facie the indorser was not liable to them. Spencer, J. in giving the opinion of the court, puts their decision expressly upon that ground. He observes that "if that fact had appeared, he should have considered him liable to the payees or any subsequent indorsees, and his indorsement might have been converted into a guaranty to pay the note if the maker did not."

The next case was *Nelson* v. *Dubois,* (13 *John.* 175,) where the question was again discussed and expressly decided. The note was payable to the plaintiff *or bearer*, and indorsed by the defendant for the purpose of giving the maker credit with him. The court held that he was liable as guarantor of payment of the note; Spencer, J. again giving the opinion, and reviewing the cases at length. *Campbell* v. *Butler* was the next case, and was directly on all fours with the case at bar. The court held the defendant liable as guarantor. The correctness of the principle adopted in these cases has been expressly recognized in *Tillman* v. *Wheeler,* (17 *John.* 326;) *Seymour* v. *Van Slyck,* (8 *Wend.* 421;) *Dean* v. *Hall,* (17 *Id.* 214;) *Oakley* v. *Boorman,* (21 *Id.* 588;) *Labron & Ives* v. *Woram,* (1 *Hill,* 91;) *Seabury* v. *Hungerford,* (2 *Id.* 80.) The case of *Labron* v. *Woram* was an action by the plaintiffs as indorsees, against Woram as a first indorser, of a note made by one Nichols payable to the order of the defendant. At the trial it appeared that both plaintiffs and defendant had indorsed the note, but that it had been paid and taken up by the plaintiffs. The defence was that the plaintiffs indorsed the note for the purpose of giving the makers thereof credit with the payee; and it was

held that they could not recover. Bronson, J. in giving the opinion of the court, says " If the plaintiffs knew of the previous negotiation and put their names upon the note for the purpose of becoming sureties to the defendant for the loan to Nichols, they can not maintain the action. In that case the defendant, if he had not negotiated the note, might have written a guaranty over the plaintiff's name, and in that form have recovered the amount of the note from them;" citing *Nelson* v. *Dubois*, *Campbell* v. *Butler*, and *Dean* v. *Hall*. See also *Story on Promissory Notes*, 473 to 476, *and notes ; Maxwell on Bills*, 48; *Chitty on Bills*, 91; *Lovelace on Bills*, 40. There are also some other cases which I shall allude to in another connection. With this mass of adjudications, during so long a time, and during the administration of judges as able as any that ever adorned any bench, before us, the principle would seem to be settled, if it be possible to settle a principle by adjudication, and if there be any form or effect in the maxim of *stare decisis*.

In all these cases the only question upon which there was any conflict of opinion was that in regard to the nature of the contract and the form of the count ; and the difference in that respect was more fancied than real, at least so far as regards the courts of this state. For whilst the courts of this state have held that a guaranty of payment was the proper contract to be written over the indorser's name, they have also repeatedly held that such guaranty was in legal effect a promissory note, or in some cases an indorsement waiving demand and notice of nonpayment ; thus in legal effect conforming to the decisions in the other states. (*Manrow* v. *Durham*, 3 *Hill*, 584. *Luqueer* v. *Prosser*, 1 *Id.* 256 ; *S. C. in error*, 4 *Id.* 420. *Miller* v. *Gaston*, 2 *Id.* 188. *Hunt* v. *Brown*, 5 *Id.* 145. *Hough* v. *Gray*, 19 *Wend.* 202. *Ketchell* v. *Burns*, 24 *Id.* 456. 26 *Id.* 430. *Curtis* v. *Brown*, 2 *Barb.* 51.) I assume, therefore, that the principle established by the decisions above cited is now the law of the land, unless those decisions have been overruled by late adjudications.

It will become necessary, then, to examine the recent cases in this state which are claimed to have had the effect to subvert

Ellis *v.* Brown.

principles settled during forty years, and see if any such potency can with fairness be given to them. On a careful examination of those cases I have been not only unable to discover in them any such reckless disregard of previous adjudications, but on the contrary I find in all of them the liability of the indorser is expressly conceded, and the only departure from previous decisions is in relation to the nature of the contract, and whether demand and notice is necessary. It may be a source of regret that our courts should have gone thus far, even. Yet the change does not affect the right, but only goes to the course to be observed in order to make the contract effective.

In *Dean* v. *Hall,* (17 *Wend.* 214,) the note was made payable to one Howard or bearer, and indorsed by the defendant in blank. The declaration counted against the defendant as maker of a promissory note, to which there was a demurrer, and the court gave judgment for the defendant. There was no averment of special circumstances to take the case out of the ordinary contract of a commercial indorser. The court held that the note, in legal effect, was precisely the same as if payable to bearer merely, and that there was no difficulty in the way of making the defendant liable in the character of a commercial indorser, and he was therefore entitled to all the privileges appertaining to that character. *Seabury* v. *Hungerford,* (2 *Hill,* 80,) was also the case of a note payable to the plaintiff or bearer, and indorsed in blank by the defendant. The plaintiff claimed to recover on proof of the note and indorsement. The judge, at the circuit, ruled that the plaintiff could not recover against the defendant as maker or guarantor, for want of proof that he was privy to the consideration; that he could not recover against him as indorser for want of demand and notice, and ordered a verdict for the defendants. The court in bank followed their decision in *Dean* v. *Hall.* Bronson, J. says, "that the defendant might be charged as indorser, and when he can be so charged he can not be made liable in any other manner."

In *Hall* v. *Newcomb,* (3 *Hill,* 233,) the note was made payable to the plaintiff or order, and indorsed in blank, by the de-

fendant, for the accommodation of the maker. No demand or notice was proved. The court held that the defendant was not liable. Cowen, J. said "that the plaintiff might have put the note in such a form, by indorsing it himself, as to charge the defendant below in the character of second indorser. The note being entirely available to the holder in that form, the giving it effect in any other would therefore be going beyond the principle which makes a contract enure as having a different effect from what its direct words import. Such a forced construction should never be made, except to prevent a failure of the contract altogether. *Ut res magis valeat quam pereat.*" The decision in this case was affirmed in the court for the correction of errors by a majority vote. The chancellor, in giving the prevailing opinion, puts his decision expressly upon the ground that the indorsement of the defendant was an available security in the hands of the payee, and that he might be charged as indorser. He says, "Here there was no difficulty in charging Newcomb as indorser of the note, in favor of Hall, from whom it appears the maker intended to get the $250 to enable him to take up the former note."

The next and last case is that of *Gilmore* v. *Spies*, similar in its circumstances to that of *Hall* v. *Newcomb*. The present supreme court, sitting in the first district, Justice Cady presiding, followed the decision in that case. The court of appeals, into which the action was subsequently brought, affirmed the decision of the supreme court, Judge Gardiner dissenting. Judges Jewett, Bronson and Gardiner, all of whom wrote opinions, assumed that the indorsement was available to the payees, and they only differed on the question whether a demand and notice was necessary to charge the indorsee; Gardiner, J. insisting that no demand or notice was necessary. It will be seen, therefore, that these decisions in no wise countenance the doctrine contended for by the defendant's counsel; but on the contrary expressly recognize the validity of the contract, and only depart from the earlier decisions in this state in holding that the indorser, under such circumstances, is entitled to all the privileges of an ordinary commercial indorser, as to demand and notice.

Ellis v. Brown.

The next question, therefore, which is presented in this case is that in relation to the nature of the contract entered into by a party who indorses a note under the circumstances proved in this case, and whether the pleadings are such as to give the plaintiff the benefit of the same. In the first place, is there any difficulty in the nature of the case in treating the defendant as an indorser, at least so far as to require of the holder demand and notice? I confess I have not been able to discover any. 1st. It has frequently been held that the indorsement of either a bill or promissory note was itself a bill of exchange. (*Story on Prom. Notes,* § 128 *and notes.* 3 *East,* 482. 1 *Salk.* 125, 132. 17 *Wend.* 221. 25 *Id.* 591. *Chitty on Bills,* 218, 219. 2 *Burr.* 669. 2 *B. & P.* 80. *Willes,* 394, 397. 5 *Term. R.* 485. 4 *Mass. R.* 258. *Skinner,* 410. 9 *Watts,* 352. 4 *Term R.* 148. 2 *Spear,* 672.) The contract written out is simply a request to the maker to pay the holder, or any particular payee, the amount of the bill or note. This of itself is, to all intents and purposes, a complete bill.

I can see no difficulty, in the nature of the case, in a party requesting the maker to pay the amount of the note to the payee named therein; and when the note is indorsed by one not a party to it, before delivery to the payee, it seems to me that is prima facie the contract entered into by the indorser. And proof that such was the intention of the parties would leave, in my opinion, no doubt. The ordinary commercial indorsement operates as an assignment or transfer of the note, as well as a bill of exchange; but when the note is not negotiable, or is indorsed by one not a party to it, it operates as a bill of exchange only. It was held in 1 *Salk.* 132, where the payee indorsed a note not negotiable, to a third person, that such indorsement amounted to a bill of exchange, drawn on the maker in favor of such person, and that the indorser was entitled to all the privileges of an ordinary commercial indorser. The legal title to the note did not pass by the indorsement, yet the relation between the indorser and indorsee was the same as if it had passed. I can perceive no greater difficulty in holding the defendant in this case liable. He was neither payee nor indorsee

of the note, and could not, therefore, make the ordinary contract of a commercial indorsement. (7 *Conn. R.* 306. 4 *Id.* 389. 6 *Id.* 315. 1 *N. Hamp. Rep.* 385. 24 *Pick.* 64. 9 *Watts,* 353.) Yet, so far as respects making himself liable, there is no difficulty.

The language of the indorsement, addressed to the maker, is "Pay the within to Newell, Daniels & Co. or order," and it thus becomes a bill drawn by the defendant upon the maker in their favor. The promise of the maker to pay, contained in the note, is equivalent to the acceptance of the bill. The acceptor in every case, in legal parlance, says, "I promise to pay the bill to the payees," in this case to Newell, Daniels & Co. The whole instrument, with the indorsement, therefore, becomes simply an accepted bill of exchange. (1 *Miss. Rep.* 194.)

2d. It follows that if the instrument is a bill of exchange, payable to Newell, Daniels & Co. or order, and has been by them indorsed, that the holder can count upon it as such, or give it in evidence under the money counts. It is always competent to declare according to the legal effect of an instrument. (*Skinner,* 410. 1 *Salk.* 125. 1 *Ld. Raym.* 181, 143. 9 *Watts,* 352. 4 *Term R.* 148. 6 *Mod.* 29, 30.)

3d. By treating the instrument as an indorsement or bill payable to Newell, Daniels & Co., the defendant is entitled to the usual privileges of an indorser, and it also avoids the necessity of resorting to the circuitous course suggested in some of the late cases. (*Hall* v. *Newcomb,* 7 *Hill,* 486. *S. C.* 3 *Hill,* 233.) The chancellor, in his opinion in that case, suggests that in order to reap the fruits of the contract the payee must indorse over the note without recourse, and then sue as holder ; in other words, in legal effect he must sell the note and buy it back again in order to make the indorsement available. As was observed by a learned senator, this method of enforcing a contract is not very consistent with the straight forward principles of the common law. It is quite obvious that the parties themselves never contemplated a resort to any such complicated machinery, in order to give the contract force and effect. Their

Ellis *v.* Brown.

intention was, doubtless, that the defendant should be liable directly to Newell, Daniels & Co.

But it is insisted on the part of the defendant, in the first place, that to hold him liable to the payees of the note would be changing the legal effect of the contract. I answer, (1st.) The same might be said in relation to all proof of the consideration or purpose of promissory notes; yet it is every day's experience at the circuit, that proof is admitted to show the note was made for the accommodation of the indorser, or some party subsequent to the maker, and thus change the relative liability of the parties as indicated by the note itself; and no one doubts the right so to do. (1 *Moody & Malk.* 226. 7 *Taunt.* 163. 4 *Watts,* 448. 1 *Hill,* 91.) It is one of the peculiar conveniences of this species of contracts, that they are not subject to all the strict rules that pertain to other written contracts. (10 *Wend.* 516. 5 *Hill,* 232.) (2.) When the note was delivered to the payees, their names were not on it as indorsers. If the contract was complete at that time between the parties, it will scarcely be insisted that they lost their rights by subsequently transferring the note. But how can we ascertain that the contract was not complete? There is no stipulation or reservation found in the contract that the payees must first indorse the note before the defendant should be deemed liable. It is simply a speculation, or at most a presumption growing out of our knowledge of the usual manner of doing business of that kind; and it would be strange indeed if such presumption could not be rebutted by evidence. Besides, there is a fallacy in treating the mere indorsement or signature as a complete contract. It simply implies an authority in the holder to write over the name such a contract as the usages of trade, or the circumstances of the case, will warrant. An indorsement by one not a party to the note in the hands of the payee, if it implies any contract whatever, is at least ambiguous, and parol evidence is competent to show the intention of the parties. (7 *Conn. Rep.* 301. 4 *Id.* 389. 6 *Id.* 315.) It is always competent to show the circumstances under which a contract is made, to aid the

court in construing it, and especially so in cases of bills and notes. (*Suydam* v. *Westfall,* 2 *Denio,* 205.)

In the second place, it is insisted that the indorsement is void within the statute of frauds. I am unable to discover any greater difficulty in this case, with the statute, than in any case where a bill or note is given as collateral security for the debt of another. It has so frequently been held that blank indorsements or signatures, even given under such circumstances, are not within the statute, that it will only be necessary to refer to them. The case of *Violett* v. *Patten,* (5 *Cranch,* 142,) was a blank indorsement of a blank note given as collateral security for the accommodation of the maker, and which was filled up by the holder. The court held (Ch. J. Marshall giving the opinion) that the indorsement was a letter of credit for an indefinite sum, and that the statute of frauds was no objection to a recovery. (*See also Douglass,* 514; *Oakley* v. *Boorman,* 21 *Wend.* 588; 1 *Strange,* 478. 3 *East,* 482.) The signature of the party implies an authority to fill up the blank; and if when that is filled, it makes a valid contract it is sufficient.

4th. Although we have shown, as we think, by an examination into the nature of the contract, that there is no difficulty in the way of a recovery against the defendant in this case as a drawer of a bill, yet we are not without direct authority upon the point. The case of *Milton* v. *De Yampert,* (3 *Ala. Rep.* 648,) is directly in point. The action was upon two promissory notes, made by one Jenkins, payable to the order of the plaintiff and indorsed by the defendant in blank. The declaration counted against the defendant as maker, and also as guarantor, and contained the money counts. It was proved upon the trial that the defendant indorsed the note as security for Jenkins the maker. Due demand and notice was also proved. It was held that the plaintiff was entitled to recover upon the money counts. Goldthwait, J. in giving the opinion of the court, says, " the contract of the defendant in this cause, though not an ordinary indorsement, in the technical sense of that word, is to be governed by similar rules, and his liability was complete as soon as the maker made default, and the notice was given of the re-

fusal or neglect to pay. (*See also Jordan* v. *Garnett,* 3 *Ala. Rep.* 610.)

The case of *Pinney* v. *Innes,* in the English court of exchequer, (1 *C. M. &. R.* 439, reported also in 5 *Tyr.* 107,) was an action upon a bill of exchange drawn by one W. Nelson, payable to the order of himself and indorsed by him, specially to the plaintiffs or order. It was indorsed by the defendant in blank, and after that by the plaintiffs, presenting a case in principle very like the case at bar. It was held that the indorsement by the defendant was equivalent to a fresh drawing in favor of the plaintiffs, and that they were entitled to recover. By Lord Lyndhurst, C. B. " The indorsement of this bill by the defendant, gave it all the effect of a new instrument, as against him." By Parke, B. " Every indorser of a bill is a new drawer. It is urged that the defendant, when he indorsed the bill, had no property in it, but that is not necessary in order to render him liable to be sued upon it. The indorsement was equivalent to drawing a new bill, and was intended to transfer that new bill to the plaintiffs. It has been argued that the case may be treated as if the defendant was indorsee of the plaintiffs, and as if he had again delivered the bill to them, and it is said in such a case, to avoid circuity of action, the plaintiffs ought not to be permitted to recover. But the fact was not so. The defendant never was the indorsee of the plaintiffs, nor was it ever intended to convey the property in the bill to him. Then he had no power to transfer that title. It depends on the intention with which a name is put upon a bill, whether the order of indorsement signifies or not." Alderson, B. " The indorsement by the defendant operated as against himself as a good and valid indorsement, though he himself had no title. Such indorsement would give a title against himself as fresh drawer, without any operation as to the other parties to the bill." I cite from the opinions at some length, because they present and triumphantly answer the same objections urged by the defendants in this case. The same general doctrine was held in Connecticut, if I understand their decisions, until their courts were led off by the decisions of the courts in Massachusetts. Chief J. Hosmer, in his

Ellis *v.* Brown.

dissenting opinion in *Beckwith* v. *Angell*, (6 *Conn. Rep.* 322,) insisted, and as I think with unanswerable arguments, upon adhering to their own decisions, but was overruled. He put the indorsement of a note not negotiable and the indorsement of a negotiable note by one not a party to it, upon the same footing, and insisted that although it would not be technically a commercial indorsement yet it was in effect the same, so far as the rights and liabilities of the indorser were concerned. (*See* 2 *Root*, 325; 4 *Conn. Rep.* 124, 527.)

The same doctrine is alluded to, and expressly approved, in the cases of *Oakley* v. *Boorman*, (21 *Wend.* 588,) and *Dean* v. *Hall*, (17 *Id.* 214.) In the latter case Cowen, J. said, " An indorsement, when the interest in the note passes, and indeed whether it does or not, as between the original parties, is in the nature of a bill of exchange drawn by the indorser upon the maker, payable to the holder. (*See also* 10 *Wend.* 516; 5 *Hill*, 232; 9 *Watts*, 353; *Max. on Bills*, 48; *Chit. on Bills*, 91; *Lov. on Bills*, 40; *Bay. on Bills*, 107.) When the indorser put his name upon this note, in whose favor did he indorse it? Or, in other words, in whose favor did he draw the bill? To whom did he request the makers to pay the amount of the note? Under the circumstances proved in this case there can be but one answer. He requested them to pay it to Newell, Daniels & Co. It follows then that the plaintiff is entitled to recover as upon an indorsement or bill of exchange drawn on the maker in favor of the payees, or their order.

But if the indorser should be held liable as maker or guarantor of the note, following the numerous decisions to that effect, there is still no difficulty in his recovering in this action. If he is a several maker of the note, the same being negotiable, the plaintiff is entitled to sue. If it be held a guaranty of payment, the guaranty being written upon the back of the instrument, it assumes, as to negotiability, the character of the paper upon which it is written, and becomes itself negotiable. (19 *Wend.* 557, 202. *S. C. in error*, 26 *Id.* 425. 24 *Id.* 456. 20 *John.* 365. 1 *Hill*, 256. 4 *Id.* 420. *S. C. in error*, 5 *Id.* 146.

Ellis *v.* Brown.

6 *Id.* 641.)   And being itself a promissory note may be given in evidence under the money counts.   (*See cases cited above.*)

Even if, in consequence of a technical difficulty, it should be held that Newell, Daniels & Co. could not have recovered directly upon the note, yet if, as in *Suydam* v. *Westfall*, they would have an action for money paid, I can see no difficulty in the plaintiff in this case sustaining his action.   There was nothing in the nature of the case to prevent the payees of the note from paying the money into the bank and having the bank sue the note for their benefit.   Suppose A. makes a note payable to the order of B., for B.'s accommodation, and which he indorses and gets discounted at a bank.   If when the note becomes due B. does not pay it, what is to prevent A. from paying the money into the bank and procuring the bank to prosecute B. upon his indorsement, for A.'s benefit?   But if a suit can be sustained by the bank, why not by an individual to whom the note is transferred, provided it is done for the benefit of the individual who is entitled to the money when collected.

The defence to the note in this case is not based upon the fact that there may be some technical difficulty in the way of a recovery by Newell, Daniels & Co. directly upon the note; but it is based upon the broad principles of equity that as between them and the defendant the note was theirs to pay, and having been taken up by them it became ipso facto satisfied.   If the party who takes up a note is not primarily liable, as between himself and other parties, to pay the same, I know of no adjudication or legal principle which would preclude him from again putting the note in circulation for the purpose of enforcing it against those parties who, as to him, are primarily liable. (4 *Bing.* 390.  3 *C. & P.* 134.)   In any aspect of the case, therefore, I feel clear that the plaintiff was entitled to recover.

In relation to the application of the proceeds of the leather consigned to Newell, Daniels & Co., I think those proceeds should be applied upon the note, unless they advanced money or property without notice of the defendant's claim.   It seems the leather in fact belonged to the defendant, and he was therefore entitled to the proceeds.   If Newell, Daniels & Co. have

sold it and received the avails, they would hold the same as so much money received to the defendant's use, and he is entitled to have it applied either as payment or as a set-off. It does not appear whether the proceeds amounted to enough to pay the note or not. A new trial should therefore be granted.

<div align="right">New trial denied.</div>

---

<div align="center">

Same Term.    *Before the same Justices.*