BENJAMIN S. HAYDEN AND WILLIAM H. DUCKWORTH v. JOHN M. WELDON AND JOSEPH M. POTTER.

1. To hold a third party who irregularly endorses a promissory note as joint maker, he must have participated in the creation of the note or shared in the consideration for which it was given.
2. Endorsing the note before the payee imports only the contract of second endorsee.
3. Where the undertaking of a third party is to further secure the payment of a debt already created between the regular parties to the note, it is a collateral contract, within the statute of frauds, requiring a writing to prove, and a consideration to support it.
4. Such an endorsement is not in itself authority to the holder of the note to write over it a contract of guaranty.
5. A guaranty is not negotiable, nor does it become so by being endorsed upon negotiable paper, the payment of which it is designed to secure.

In case.    On rule to show cause.

The suit was against the defendants, Weldon and Potter, on a promissory note made by Weldon, payable to A. I. Farrand or order, six months after the date. After the execution and delivery of the note to the payee, Potter, at the request of the maker, put his name on the back of the note. This endorsment was before the name of the payee was written upon the note. It was made without consideration, and the name or credit of Potter was in no way involved in the making of the note.

The payee subsequently, and before maturity, endorsed the note to the plaintiffs for value.

The declaration was against Weldon as maker, and against Potter as joint maker, as guarantor and as endorser.

The other facts sufficiently appear in the opinion of the court.

Argued at November Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the rule, *J. H. Stone* and *Leslie Lupton*.

Contra, *J. N. Voorhees* and *John Schomp*.

The opinion of the court was delivered by

KNAPP, J. The only question raised in this case, requiring consideration, is, whether the defendant, Potter, is liable on the note upon which his name appears. It received his endorsement before that of the payee was put upon it; and as such an endorsement in itself indicates nothing of the character of the liability intended by the parties, resort must be had to extrinsic evidence to discover what were his relations to the transaction, and with what purpose he put his name upon the paper. The circumstances may show a party to such irregular endorsement to be either a surety or joint maker, or guarantor, or he may held be as a second endorser. *Chaddock* v. *Vanness,* 6 *Vroom* 517.

The declaration contains counts against him as joint-maker, guarantor and as an endorser, and his liability in one or other of these aspects must appear to support the verdict against him. The note was drawn by Weldon, payable at six months, to the order of Farrand, and was delivered to the payee with no agreement or understanding between them or with Potter, that the latter was to be in any manner a party to the note, or that any security was to be furnished by Weldon on the note. Between Weldon and Farrand, then, a debt was thus created, the debtor, the sum of the indebtedness, and the time of credit ascertained and established by the delivery of an instrument perfect and complete in its terms. Some days after its delivery to the payee, Potter was requested by the maker to endorse the note; the note was produced by the payee and Potter wrote his name on the back of it. It is evident, from this state of facts, that he is not to be considered a joint maker, for in the creation of the original debt he did not participate, nor was he in any manner allied to the consideration on which the note was grounded. The note was not given or received upon any understanding or expectation that his suretyship in

any form, or that any additional security should be had upon the note to strengthen the maker's undertaking.

Neither property nor rights were parted with by the payee on the credit of Potter's name.

In order to charge him in that capacity, his credit should have been so involved in the original transaction that the contract under which the payee parted with his property or rights was not, in the contemplation of the parties, complete without the name of Potter as surety. *Moies* v. *Bird*, 11 *Mass.* 436; *Tenney* v. *Prince*, 4 *Pick.* 387; *Mecorney* v. *Stanley*, 8 *Cush.* 85; *Chaddock* v. *Vanness, supra.*

When the note came to the plaintiffs with the endorsement of the payee and Potter, the signature of the latter imported the contract of second endorser, and he might have been charged with that liability. But it is not contended that in this suit he can be held as endorser, for it appears that notice requisite to charge him in that capacity was not given.

Is he chargeable as a guarantor? When the note was produced at the trial that form of contract was found written over his signature; but it was not there when the endorsement was made, nor was it written there by his direction or with his knowledge. The plaintiffs insist that such was the character of the defendants' engagement, and signing the note in blank authorized them to write over the blank a guaranty.

It was said in Chaddock *v.* Vanness, that when a third party puts his name on the back of a promissory note as a surety or guarantor for its payment, in pursuance of an original agreement entered into before or at the time of giving the note, in consideration of which the payee agrees to accept it, the payee may write over such signature a guaranty or promise to pay, which shall be a sufficient memorandum within the statute of frauds.

But the case here is not analogous to those original undertakings of a third party in the creation of the debt, where, although he may be called a guarantor, his liability, in legal effect, differs in nothing from that of a co-maker. In such cases the statute of frauds is inapplicable. In this case, where

the contract creating the debt was fully consummated, the alleged promise of defendant to pay or further secure the debt was a collateral engagement, within the statute, required a writing to prove it, and a new consideration to support it. *Fell on Guar. and Sur. App.* 483.

And where, as here, the alleged promise is clearly one to pay the debt of another, and therefore necessarily in writing, I do not see how a mere signature in blank can be considered such writing.  It has in its relations to the original debt no such fixed significance that the law will from it imply a specific duty or liability ; and is the holder to determine for himself, out of the variety of forms that such a contract is capable of, which one the persons signing shall assume?  I think the blank endorsement gave no implied authority to write over it any form of guaranty.  And such I understand to be the view expressed by Chief Justice Hornblower in *Crozer et al.* v. *Chambers, Spenc.* 256.

Treating the superscription however, as properly made, it is clear that on the evidence he cannot be held in that character. As has already been said, to support such promise there must have been a valid consideration.  The defendant's engagement was entirely gratuitous.  Not a feature of the original debt was changed in consequence of it; the payee yielded nothing of his rights ; and neither the maker nor the guarantor gained anything in either position or pocket.  There resulted no benefit to the party promising, or to him for whom the promise was made ; no prejudice, damage, suspension of right or possibility of loss to the guarantee.  It wanted the essential of a consideration to render it better than a *naked* promise.  Between the original parties the verdict could not find support in the evidence.

But the plaintiffs are *bona fide* endorsees of the note for valuable consideration, before dishonor.  Does this put them on any better footing in the case?  It is clear that if the defendant did not assume the legal character of joint maker of the note, that is, an original surety or promisor through his contract, no subsequent negotiation of the note could force

him into that attitude.   Regarding him as a guarantor of negotiable paper, there is nothing in the law which precludes him from setting up want of consideration for such promise.

Against this view, it is urged that a guaranty, when endorsed upon negotiable paper, becomes so incorporated with it as to partake of its negotiable character, and to be transferable by the endorsement or delivery of the bill or note, that it passes by the same title, and has incident to it, the same protection against defences in the hands of a *bona fide* holder that attaches to commercial paper.   But this is not a correct view of the nature and attributes of the contract.   By the weight of judicial authority it is regarded as a mere personal engagement, limited to and ending with the person to whom it is addressed or by whom it is first accepted ; and that unlike bills of exchange and promissory notes, it is not excepted out of the ordinary rule governing the transfer of choses in action.

I refer to a few of the decided cases supporting this rule.

In the case of *Lamouriex* v. *Hewitt*, 5 *Wend*. 307, the defendant wrote and signed on a negotiable note the following contract :   "I warrant the collection of the within note for value received."   The note was transferred to the plaintiff, who held it when it fell due; the court ruled that the action on the guaranty could not be maintained in the name of the plaintiff, that it was a special contract with the payee, and any action upon it must be in his name.   In *Ellis* v. *Brown*, 6 *Barb*. 282, where the action was by an endorsee of a promissory note against an irregular endorser as a guarantor as well as joint maker, the court uses this language :   "It is obvious that the action cannot be maintained against the defendant as a guarantor of the note.   A person who guarantees a note is in no sense a party to the note.   A guaranty is a special contract and must be specially declared on.   It is only where the person called the guarantor has been held by the court to be, in legal intendment, the maker of the note that a different rule has prevailed.   If the endorsement were to be regarded as a guaranty, such guaranty was made to the payee, and the action should have been brought in his name and not in that of the

endorsee." In *McLaren* v. *Watson's Ex'rs*, 26 *Wend.* 425, it was held that a general guaranty of a promissory note made on a separate paper and given to the payee, the note and guaranty endorsed and transferred together to the plaintiff, did not authorize suit on the guaranty in the name of the plaintiff. The cases of *Ketchell* v. *Burns*, 24 *Wend.* 456, and *Leggett* v. *Raymond*, 6 *Hill* 639, are sometimes cited as authorities in favor of the negotiability of such a contract, but I think they fail to support the position. In the first of these cases the defendant endorsed on a promissory note the following: "For and in consideration of $31 received of B. F. S. I hereby guarantee payment and collection of the within note to him or bearer." This note, with the endorsement, upon it was delivered by S. to the plaintiff, and he was allowed to recover; the court placing it upon the ground that its effect was that of a *new note* for the payment of the money upon *full consideration*, and as it was made payable to Spencer *or bearer*, it was negotiable. But in this case the ruling in Lamourieux *v.* Hewitt was mentioned with approval. The other case was that of a general guaranty written on the back of a note and signed by the payee, and this signature to the guaranty was the only endorsement of the note to the plaintiff. The real question in that case was whether the signature of the payee to the guaranty constituted as well an endorsement of the paper. It was ruled that it was a sufficient transfer of the note, and the defendant was held as an endorser.

So far as the court expressed an opinion on the subject of the negotiability of the guaranty it was emphatically against it. The same question was fully considered and a review of the cases had in *Miller* v. *Gaston*, 2 *Hill* 188, the result being against the negotiability of such a contract.

In Massachusetts the same is found to be the law. It was so decided in *True* v. *Fuller*, 21 *Pick.* 140. The suit was upon a guaranty endorsed upon a promissory note as follows: " I guarantee the payment of the semi-annual interest of this note as well as the principal." This was signed by the defendant, and the note was transferred by the payee to the plaintiff.

In the opinion of the court, which was delivered by Chief Justice Shaw, the plaintiff was held not entitled to recover, "because the guaranty in question was not made to him or whilst he was the holder of the note, that it was not negotiable in itself and was not made so by being written upon and intended to secure a negotiable instrument;" and he further remarks, "it is no more a negotiable promise than if it had been written on a separate writing referring to the note and guaranteeing it to the then holder." To the same effect are *Tuttle* v. *Bartholomew*, 12 *Metc.* 452; *Belcher* v. *Smith*, 7 *Cush.* 482. The same is held in Pennsylvania. *McDoal* v. *Yeomans*, 8 *Watts* 361.

Other cases of like import may be found in notes to 2 *Pars. on Notes and Bills* 133. That author declares the weight of authority to be decidedly opposed to the negotiability of a guaranty whether endorsed upon the note or existing separately from it, and his own view is expressed as being entirely in concurrence with that legal result. See, also, cases in *Fell on Guar. and Sur.* 298, &c.

Where the irregular endorsement grows out of a participation by the endorser in the original transaction, such as in legal contemplation would hold him as a joint maker, as where his credit is given as security for the maker on the faith of which the payee of the note accepts it—in other words, where his relation to the transaction is such that he may be considered as a party to the note—his liability passes to subsequent legal holders, with the rights that attach to commercial paper; but where his contract is strictly that of guaranty, that is, collateral to the original undertaking, it is not negotiable, possesses none of the attributes of negotiable paper, and is liable to all defences that other non-negotiable choses in action are subject to.

It is plain, then, I think, that under the evidence in this case there was no view in which the defendant, Potter, could be held, and the rule to show cause as to Potter should be made absolute. As to the other defendant, I see no reason why the verdict may not stand against him.